(July 14, 1905.)

## HANSEN v. HALEY.

[81 Pac. 935.]

A JUDGMENT RENDERED ON THE VERDICT OF A JURY FINAL WHEN—INSTRUCTIONS TO THE JURY—EXCEPTIONS TO INSTRUCTIONS.

1. Where it is shown that a material and substantial conflict in the evidence occurs on the trial, the question or preponderance of evidence does not enter into the determination of the appeal in this court; the jury being the judges of the evidence and the weight to be given to it, the verdict and the judgment therein will be sustained.

2. Where the court instructs the jury on all the material issues involved as presented by the pleadings, and disclosed by the evidence, it is not error to refuse a request of either plaintiff or defendant unless it is shown that the instructions, or some portions of them, are erroneous.

(Syllabus by the court.)

APPEAL from the District Court of Cassia County. Honorable Lyttleton Price, Judge.

Judgment for plaintiff, from which defendants appealed. Judgment affirmed.

The facts are stated in the opinion.

Henderson, Pierce, Critchlow & Barrette and A. Derbyshire, for Appellants.

It is a plain and elementary rule that parol proof cannot be given to vary or change the terms of a contract made in writing and deliberately entered into. The rule is equally well settled that where the contract is ambiguous as to the subject matter to which it applies, that proof of the surrounding circumstances as they exist at the time the contract was made may be given to the court or jury, and if, with such proof, the contract upon its face, and according to its terms, can be readily ascertained and determined from its language, that no other or further proof is permitted to vary or change its meaning. (Browne on Parol Evidence, 116 et seq., and notes; 1 Greenleaf on Evidence, 16th ed., 406-411, secs. 277-288; 2 Am. & Eng. Ency. of Law, 291, 292, and note 1 on p. 292; *Altschul v. San Francisco Assn.*, 43 Cal. 172; Broom's Legal Maxims, 8th ed., pp. 608-616.)

Hawley, Puckett & Hawley, J. C. Rogers and K. I. Perky, for Respondent, cite no authorities in their brief.

STOCKSLAGER, C. J.—The plaintiff, who is respondent here, commenced his action in the district court of Cassia county, alleging that on the twenty-first day of December, 1903, he was the owner, in possession and entitled to the possession, of the following stock cattle of the value of $1,500, to wit: Sixty head in the aggregate of cows and heifers branded with the figure "2" on the left hip, situated on Raft river, Cassia county, Idaho. That said cattle were sold and delivered to plaintiff on or about the fourteenth day of December, 1903, by J. M. Pierce, who was at the time of such sale the owner and in possession, and entitled to the possession, of said cattle. That prior to the time of said sale and delivery, said J. M. Pierce, for the purpose of securing his certain promissory note made to the defendants, Haley & Saunders, of date December 9, 1902, payable on or before December 9, 1903, for the sum of $12,368.70, and bearing interest at the rate of eight per cent per annum from maturity until paid, made to defendants, Haley & Saunders, his certain chattel mortgage of even date with said note, upon a large band of sheep, to wit, three thousand four hundred

and seventy-four head, and one hundred and fifty head of stock cattle, which said stock cattle included the sixty head herein first described as the cattle sold to plaintiff by said J. M. Pierce. That on July 10, 1903, said J. M. Pierce paid on said promissory note and mortgage the sum of $1,000, and afterward, to wit, on the ninth day of October, 1903, said J. M. Pierce paid the whole balance on said note and mortgage except the um of $179 by the sale and delivery to them of said band of mortgaged sheep and the agreed application of the proceeds thereof to the payments of said promissory note and mortgage indebtedness, and that afterward, on or about the tenth day of December, 1903, at Salt Lake City said J. M. Pierce made due tender of said sum and residue of said note and mortgage indebtedness to defendants, Haley & Saunders, in lawful money, which said defendants refused to accept. That said tender discharged said defendants', Haley & Saunders', lien of said mortgage upon the sixty head of stock cattle hereinbefore described, but notwithstanding said payments and said tender, defendants, Haley & Saunders, failed and refused to surrender to said J. M. Pierce said note and mortgage or in any manner to cancel the same, and after said payments and said tender aforesaid had been made proceeded summarily to foreclose said mortgage without action in court or judicial proceeding of any sort and by and with the aid and assistance of the defendant, A. Lounsbury, the then duly elected, qualified and acting sheriff of Cassia county, said Haley & Saunders, together with the defendant, A. Lounsbury, sheriff as aforesaid, at Raft river, Cassia county, did on or about December 21, 1903, and while plaintiff was in the rightful possession of said cattle, seize, take over and carry away each and all of said cattle. That on the twenty-sixth day of December, 1903, plaintiff demanded possession and the return of said cattle of the defendants, and defendants failed and refused to return the same, or any part thereof, and defendants converted and disposed of the same to their own use to the damage of plaintiff in the sum of $1,500.

Plaintiff further avers that he has expended and incurred obligations and expended for attorney's fees, and has expended time and money of the value of $300 in pursuit of said property, which amount he claims as damages.

Prayer follows in harmony with the complaint. Defendants jointly answered the complaint, denying that on the twenty-first day of December, 1903, or at any time, plaintiff was the owner or entitled to the possession of the sixty head of stock cattle, or any part thereof, or that sixty head of cattle were then of the value of $1,500 or any other or greater value than $12 per head, or a total of $720. Deny that said cattle were sold or delivered to plaintiff on or about the fourteenth day of December, 1903, by said J. M. Pierce, and deny that said J. M. Pierce at said time was the owner of or entitled to the possession of said cattle.

Admit the execution of the note and mortgage on December 9, 1902, as alleged in the complaint. Admit the payment of $1,000 by said J. M. Pierce on the promissory note and mortgage.

Deny that on the ninth day of October, 1903, or at any other time, said J. M. Pierce paid the whole balance of said note and mortgage to defendants Haley & Saunders, or any other or greater sum than $7,608.76, which sum was paid upon said note by said J. M. Pierce to Haley & Saunders on the thirteenth day of October, 1903. Deny the sum of $179 was due on said note on the tenth day of December, 1903. Admit that on the tenth day of December, 1903, at Salt Lake, said J. M. Pierce made a tender of $165, and no more, to said Haley & Saunders, and that Haley & Saunders refused to accept the same, and then and there notified said Pierce that there was a large amount due upon said mortgage and note greatly in excess of said sum of $165. Deny that said tender discharged said mortgage of Haley & Saunders. Admit that Haley & Saunders refused to surrender to said Pierce the note and mortgage. Admit that defendants Haley & Saunders foreclosed the mortgage as alleged and that defendant A. Lounsbury is the sheriff of Cassia

county as alleged. Admit the demand for the return of the cattle as alleged and refusal to return them.

As a separate defense, defendants Haley & Saunders aver the execution and delivery of the note of December 9, 1902, for $12,386.70, and the execution and delivery of the chattel mortgage of even date to secure the note on the band of sheep alleged to be three thousand three hundred and seventy-five; and the payment by said J. M. Pierce to Haley & Saunders of $1,000 on the first day of July, 1903, in cash on said note. That on the fourteenth day of August, 1902, at Salt Lake, Utah, said J. M. Pierce made, executed and delivered to defendants Haley & Saunders, his promissory note for $3,361.50, payable twelve months after date, with interest at the rate of eight per cent per annum until paid, both before and after judgment, and that there was paid thereon on the fifth day of September, 1903, by said J. M. Pierce, the sum of $267. That on or about the ninth day of October, 1903, said Haley & Saunders purchased of said Pierce all of the sheep described in the chattel mortgage, together with the increase thereof, and said ninety-nine head of Cotswold rams, and all the property described in said chattel mortgage, except the one hundred and fifty head of stock cattle hereinbefore referred to for the agreed price of $11,017. That said property was delivered to Haley & Saunders by said Pierce at or near McCammon, on the thirteenth day of October, 1903, and that at the time of the purchase of said property and delivery thereof, it was agreed between said J. M. Pierce and said Haley & Saunders that the said unsecured note should be paid first out of said $11,017, and that then and there there was due upon said unsecured note the amount of $3,408.24. That said unsecured note was canceled and tendered to said J. M. Pierce, and that it was further agreed that the balance of the purchase price of said sheep, to wit, $7,608.76 should be indorsed upon said secured note, and that the same was pursuant to said agreement paid and indorsed on the note on the thirteenth day of October, 1903, and that it was further agreed between said Haley & Saunders and said J. M. Pierce that the one hundred and fifty

head of cattle described in said mortgage and mortgaged to said Haley & Saunders should be, together with the increase thereof, held as security for the balance unpaid upon said note of December 9, 1902. That the balance of the said secured note became due and payable to said Haley & Saunders on the ninth day of December, 1903. That on or about the sixteenth day of December, 1903, said J. M. Pierce was attempting to dispose of said one hundred and fifty head of cattle and the increase thereof, and said Haley & Saunders, mortgagees, deemed themselves insecure for the balance of the secured note, and that thereafter, on said sixteenth day of December, 1903, B. F. Saunders, on behalf of the firm of Haley & Saunders, made an affidavit as required by law giving the names of the parties thereto, a full description of the property, the amount then due upon said secured note, to wit, $3,629.92, a copy of said mortgage was attached to said affidavit and made a part thereof. That said affidavit was on the nineteenth day of December, 1903, placed in the hands of defendant, A. Lounsbury, sheriff of Cassia county, together with a notice signed by said Haley & Saunders requiring the sheriff to take into his possession said one hundred and fifty head of cattle and the increase thereof, and to sell the same as required by law for the foreclosure of chattel mortgages. That said affidavit and said notice were personally served upon said J. M. Pierce in Cassia county, by said sheriff on the twenty-first day of December, 1903, and that said sheriff then and there took into his possession said cattle so mortgaged, and that attached to said papers served by said sheriff upon said J. M. Pierce was a notice in writing signed by the sheriff giving a description of the property, amount claimed to be due, and the time and place of sale, to wit, the twenty-ninth day of December, 1903, at 2 o'clock P. M. at the old Sweetser ranch at Raft river in said county; that notice of such sale was posted in the precinct where such property was to be sold, and also published in the "Albion Times" as required by law. That pursuant to said notice on the twenty-ninth day of December, 1903, at the time and place above designated, said

sheriff offered for sale and did sell said property; that after applying all the proceeds of the sale of said property by the sheriff upon said secured note, there still remains due and unpaid thereon an amount in excess of $1,900. With the pleadings thus framed a jury trial was had at the March, 1904, term of the district court of Cassia county, and the following verdict was returned:

"We, the jury impaneled in the above cause, find for the plaintiff and assess the damages at $1,080."

From the judgment and an order overruling a motion for a new trial, the appeal is taken.

Counsel for appellants assign thirteen errors, to wit:

"1. The court erred in admitting in evidence Plaintiff's Exhibit 'C,' being the duebill, dated October 24, 1903, for $162, signed by J. M. Pierce, and in overruling the defendant's objection thereto.

"2. The court erred in overruling the defendant's objection to Plaintiff's Exhibit 'D,' being the duebill for $120, dated February 7, 1903, signed by J. M. Pierce, and in admitting said duebill in evidence against the objection of said defendants.

"3. The court erred in striking out from the record and the testimony as a part of the cross-examination of witness, J. M. Pierce, the letter dated December 11, 1903, addressed to J. M. Pierce, Esq., signed Haley & Saunders, by B. F. Saunders, and marked as Defendant's Exhibit 1, and overruling the objection of these defendants to the motion of the said plaintiff that the same be stricken out from the testimony.

"4. The court erred in sustaining plaintiff's objection to the introduction of Defendant's Exhibit 1, and in excluding said exhibit '1' from the testimony and evidence in this case as offered by defendants in the redirect examination of defendant B. F. Saunders.

"5. The court erred in overruling the objection of defendants to the question put by plaintiff's counsel to witness J. M. Pierce as follows: 'Court: Mr. Pierce, in your dealings or negotiations with the defendants, Haley & Saunders, has

there been any discussion or communication between you in writing regarding the sale of this mortgaged property at any time? A. Yes, sir; there has, yes, sir. Court: Now, you may go on. Rogers: What was that communication? Henderson: I object to that, that it is incompetent as being an oral arrangement which is sought to be proven and not being in writing'; and in overruling the objection last stated and permitting the witness to make answer thereto.

"6. The court erred in denying the motion to strike out the testimony of witness J. M. Pierce, said motion being as follows: 'Henderson: Before this witness goes off the stand, I ask now to strike out the testimony he gave here in relation to the authority to sell, upon the ground that it is shown to be conditional authority, and that there is no pretense here that the authority so given was exercised in any way, if it was such,' and in allowing said testimony so given to remain in the cause as evidence to be considered by the jury.

"7. The court erred in overruling the objection made by defendants to the introduction and reading in evidence of Plaintiff's Exhibit 'K' as a part of the testimony of witness J. M. Pierce, said letter being dated August 17, 1903, signed B. F. Saunders, and in permitting said letter to be read in evidence to the jury against the objection of said defendants.

"8. The court erred in refusing to charge the jury as requested in said defendant's request No. 3, as hereinbefore set out.

"9. The court erred in refusing to instruct the jury as requested by defendants in their request No. 4, as hereinbefore set out.

"10. The court erred in refusing to instruct the jury as requested by the defendants in their request No. 6, as hereinbefore set out.

"11. The court erred in refusing to instruct the jury as requested by the defendants in their request No. 2, as hereinbefore set out.

"12. The court erred in modifying the said request of the said defendants, No. 2, as hereinbefore set out, and in giving

the said request No. 2, as modified by the said court as hereinbefore set out.

"13. The court erred in charging the jury as follows: 'Incidental to this is the question in controversy as to whether the purchase price of the sheep sold by Pierce to Haley & Saunders was to be applied to the unsecured note or the mortgage debt. There is evidence introduced here tending to support both sides of this contention by the respective parties, and from their evidence, and from it alone, you must decide this point in controversy. If you should find that Mr. Pierce had paid the mortgage debt by sheep as the plaintiff contends, then he had the right to sell the cattle, and the plaintiff was the owner and has the right to recover.' "

It would seem that the serious questions arising in this case grew out of a proper construction of a certain contract entered into between J. M. Pierce and Haley & Saunders on the ninth day of October, 1903, as follows:

"This agreement made this the ninth day of October, 1903, by and between J. M. Pierce of Cassia county, Idaho, and Haley & Saunders of Salt Lake City, Utah, is as follows: Said J. M. Pierce has bargained and sold and agrees to deliver to said Haley & Saunders all of the ewes he has branded = 1, being now in Rattle Snake, Idaho, except there are to be no cripples, poisoned, diseased, lame or big bag ewes, the price of 400 of said ewes is $1.50 per head, the balance two and seventy-five one-hundredths dollars per head; also about seventeen hundred lambs belonging to said ewes, branded = 1; also now in Rattle Snake, Idaho; to be no cripple, sick, poisoned, diseased or bummer lambs, the price of said lambs is $1.50 per head, said sheep are to be delivered in Rattle Snake, to said Haley & Saunders within five days from this date, the proceeds of said sheep are to be applied on paper now held by Haley & Saunders, also that ninety head of rams, branded —— at seven dollars per head, also to be applied as the aforesaid sheep, the balance on said paper is secured by a chattel mortgage on one hundred and fifty head of cattle, branded 2 on left hip, said mortgage being due December 9, 1903, and which is hereby extended to April,

1905, the above sheep are the sheep purchased from Haley & Saunders in December, 1902, and their increase and on which they hold a mortgage, dated December 9, 1902, this agreement is executed in duplicate, each party holding a copy.''

This contract was introduced in evidence by the plaintiff without objection from defendants and much oral evidence is given on both sides of this controversy by the parties who were present at the time of the execution and delivery of the contract which was in duplicate. As we read the record in this case, the question of the right of recovery in the plaintiff is largely dependent upon the construction to be given this contract. If the jury can be justified in the construction given it the judgment should be affirmed, otherwise it should be reversed. B. F. Saunders and Frank Pierce swear positively that on the evening of October 8, 1903, they, with J. M. Pierce, met at the hotel at McCammon, and discussed the business relations between Haley & Saunders and J. M. Pierce, and that it was then agreed that Haley & Saunders should purchase the mortgaged sheep with their increase, and first apply the proceeds to the payment of the unsecured note of $——; that the only unsettled question after the interview that evening was the price to be paid for some of the sheep; that Saunders and J. M. Pierce were to go to see the sheep the next day (October 9th), and agree upon the price, which Saunders says was done, and the written contract the night of October 9th was the result of their agreement. It is shown that Frank Pierce returned to his home the night of October 8th. J. M. Pierce does not contradict Frank Pierce and Saunders as to the conference at the hotel at McCammon, the evening of October 8th, nor is there any dispute as to the fact that J. M. Pierce and Saunders were to see the sheep before the price of certain of the sheep should be settled. J. M. Pierce does, however, flatly and positively contradict the evidence of Frank Pierce and B. F. Saunders as to the nature of the conversation and the conclusion reached on the night of October 8th, relative to the manner the proceeds of the sale of the sheep should be applied—that is,

whether, first, to the payment of the unsecured note or entirely to the payment of the secured note. Mr. Saunders testifies: "We commenced negotiating with Pierce on the evening of the 8th about the sale of the sheep to me or the firm, and we agreed on the terms of how the sheep were—the proceeds of them were to be applied on that evening, and everything was agreed on, except looking at the sheep; the price of part of the ewes. I went out with him the next day, and we agreed on the price of the ewes and the sheep; it was agreed between us as to how the proceeds of the sheep should be applied. I had those two notes at McCammon, when I went up there, and I showed them to Mr. Pierce, and we talked the notes over."

In answer to a direct question he says: "It was agreed between J. M. Pierce and myself that the unsecured note should be paid first, on the night of October 8th, and that is when we made the agreement; and the balance of the proceeds of the sheep was to be applied on the secured note."

Mr. Frank Pierce, after relating a conversation at McCammon the evening of October 8th between himself and B. F. Saunders, testifies: "The agreement was that Mr. Pierce would turn over the sheep to Mr. Saunders, that the proceeds should be applied first to pay the unsecured note, and the balance to be paid on the secured note, and that Haley & Saunders would give Pierce time to pay the balance on the mortgage note and debt."

J. M. Pierce testifies that he had a conversation with Mr. Frank Pierce and Mr. Saunders at McCammon on the evening of the 8th, as related by each of them, and says: "After dinner, probably 8 o'clock, we went up to the room. Mr. Pierce said they had become alarmed in regard to the way the sheep were being handled, and that they had come up to see about it, and asked me if I would turn over the mortgaged property, the cattle and the sheep on it, the mortgage note and the unsecured note, and I told them I would not. The mortgaged property I meant. Q. I understand the cattle as well as the sheep? A. The cattle and the sheep, the band of cattle and the sheep. Q. Did your conversation relate

to any particular price for those sheep at that time on the 8th? A. We talked different prices and I told them if they came to take them, I had nothing to say about the price; they could take them, I suppose, I could not set a price; if they came to take them they could set the price. Q. Did they talk about taking in that conversation? A. They talked as though they wanted to fix it up; they had become alarmed; they were not being properly attended to. Q. Was any agreement reached there on the 8th? A. No final agreement." Then witness relates the conversation of himself and Mr. Saunders going to look at the sheep on the 9th and their return to the hotel that evening; says they talked many ways and many prices during the day, but did not finally agree until after they got down at McCammon the evening of the 9th, and that the written contract, Plaintiff's Exhibit "F," was the result of such agreement. Again, speaking of what led up to the written contract, Mr. Pierce said on cross-examination with reference to the conversation with Frank Pierce and Mr. Saunders: "Q. Did you have a talk with them there? Did you talk together about what they had come up there for? A. Yes, we had a talk what they came up for. Q. Didn't Mr. Pierce at that time, in the presence of Mr. Saunders, say that they would get the unsecured note secured? A. I don't remember that he did say that he wanted to get it secured. Q. Was there anything said between you and defendant on that day about turning over the property in payment of the unsecured note and the balance applied on the mortgage note? A. Yes, they asked me if I would turn over the mortgaged property, cattle and sheep and pay both notes, if I would pay the two notes and turn over the mortgaged property. Q. That you said you would not do? A. That is what I said, yes, sir." Further, on cross-examination, Mr. Pierce testified that on the evening of the 8th there was talk about the application of the proceeds of the sale of the sheep, but no agreement reached. This much we have quoted from the evidence to show there was a succession of contradictions. It is shown by the record that Frank Pierce and B. F. Saunders testify positively that an agreement was reached at Mc-

Cammon on the night of the 8th of October as to the disposition of the proceeds of the sale of the sheep, the remaining question being only the prices to be paid for the various grades of sheep which were thereafter to be agreed upon by Mr. Saunders and J. M. Pierce after they had an opportunity to inspect them the next day. Mr. J. M. Pierce corroborates them in so far as they say the subject was discussed on the night of the 8th of October at McCammon, and that it was insisted that he should let the proceeds of the sale of the sheep first apply to the payment of the unsecured note, and is just as emphatic in his denial of any agreement to that effect that night or any other time as are Frank Pierce and Mr. Saunders to the contrary. It is shown that Mr. Frank Pierce left McCammon on the night of October 8th for his home in Salt Lake, or at least after a long conference between himself, J. M. Pierce and Mr. Saunders, retired to his room; that no agreement was reduced to writing that night; that the written agreement was prepared by Mr. Saunders and signed by himself for his firm and by J. M. Pierce after their return from a visit to the locality of the sheep on the 9th. Mr. Frank Pierce knows nothing of the relations between Saunders and J. M. Pierce after a late hour on the night of the 8th. It is also shown by the evidence of Mr. Saunders, as well as that of Mr. J. M. Pierce, that on the 9th they discovered the various phases and conditions of their business relations, and the prices to be paid for the different grades of sheep to be received by Haley & Saunders, and finally agreed upon a settlement, at least a writing was prepared and signed by both of them.

Many other questions were before the court and jury on the trial. Mr. J. M. Pierce testified that he was financially embarrassed; that he owed others who were residents of Cassia county, and was very desirous of having extension of time for the payment of his obligations to Haley & Saunders; he also testified that he had learned that his band of lambs upon which Haley & Saunders had the mortgage was four hundred short of the count at shearing time; that he feared the same ratio might exist with the other sheep, and if so, after ap-

plying the money derived from the sale of the sheep, he would still be in debt on the mortgage $1,200 or more. All these facts were before the jury, and in addition thereto it was called upon to interpret the written contract which was the final determination of the conference between Haley & Saunders, Frank Pierce and J. M. Pierce, and by their verdict they said the plaintiff should recover for the value of the cattle.

A motion for a new trial failed to convince the learned trial judge that an injustice had been done the defendant. This court has so frequently announced that rule that where there was a substantial conflict in the evidence, and the trial court refused to grant a new trial, it would not disturb such finding, that we deem it unnecessary to refer to the numerous decisions so holding.

In this case, as well as in all cases of this character, the court wherein the trial is had, together with the jurors, have so many opportunities to gather facts in the trial that cannot be presented to this court in the record, and which may have an important bearing on the questions at issue and be legal and competent evidence, circumstances or conditions surrounding the trial of the case, and entirely proper for the jury to consider, is one of the reasons, and perhaps the most important one for the rule above announced.

Counsel for appellants at the close of the trial submitted to the court seven requests to charge the jury. The court gave the first, modified and gave the second, refused to give the third, fourth and sixth, and gave the seventh. The third request is as follows: "There is no evidence in this case of any sale of any part of the cattle in controversy, under and in compliance with any authority given with the mortgage." The fourth is: "There is no evidence in this case justifying a verdict in favor of the plaintiff, and your verdict should therefore be for the defendants—no cause of action." The sixth is: "There is no testimony in this case tending to show that there was any other permission given by Haley & Saunders to sell any of the property covered by the mortgage, except on condition that the purchase price thereof should be

paid upon the mortgage, and there is no testimony in the case tending to show that this condition was complied with, and therefore you cannot find in the evidence that any sale was made by the consent of the mortgagees." Request No. 2 is as follows: "In this case the chattel mortgage introduced in evidence and given by J. M. Pierce to Haley & Saunders, on or about the twelfth day of December, 1902, was duly filed for record in the recorder's office of this, Cassia county, Idaho, according to law. The filing of said mortgage gave notice to plaintiff and all the world of the existence of said mortgage. It was the plaintiff's duty to inquire of the mortgagees, Haley & Saunders, whether or not the same had been paid, and if he failed to make inquiry of them, and the same had not been paid, he is guilty of negligence, and is not entitled to recover in this action if any part of the mortgage is unpaid." Request No. 2, as modified and given by the court, is as follows: "In this case the chattel mortgage introduced in evidence and given by James M. Pierce to Haley & Saunders, on or about the twelfth day of December, 1902, was duly filed for record in the recorder's office of this, Cassia county, Idaho, according to law. The filing of said mortgage gave notice to plaintiff and to all the world of the existence of said mortgage. It was the plaintiff's duty to inquire from some proper source of information whether or not the same had been paid, and if he failed to make such inquiry, and the same had not been paid, he bought at his peril, and got no title by such purchase thereof, and he cannot in this case recover."

We think, under the evidence in this case, the court was entirely justified in its refusal to give the third, fourth and sixth instructions, as evidence had been introduced on the trial bearing on those questions; neither do we see any objection to the modification of instruction No. 2. The firm of Haley & Saunders, the mortgagees, was not the only source of information as to whether or not this mortgage had been paid, and the court properly says that the plaintiff should obtain his information from some proper source. The court, on its own motion, gave the following instruction: "Inci-

dental to this is the question in controversy as to whether the purchase price of the sheep sold by Pierce to Haley & Saunders was to be applied to the unsecured note or the mortgage debt. There is evidence introduced here tending to support both sides of this contention by the respective parties, and from their evidence, and from it alone, you must decide this point in controversy. If you should find that Mr. Pierce had paid the mortgage debt by sheep, as the plaintiff contends, then he had the right to sell the cattle and the plaintiff was the owner and has the right to recover."

Counsel for appellants insist that "this instruction entirely disregards every other question in the case except as to what the oral agreement was between J. M. Pierce and Haley & Saunders on the ninth day of October, 1903. It puts aside entirely the written contract; not only this, but in express terms it excludes the contract and in it he tells the jury that evidence has been given by the parties to the contract of October 9th, as to the application of the proceeds of the sheep, and that from their evidence, and from it alone, you must decide this point in controversy. It was a plain and direct statement to the jury that nothing else should be considered in determining that question except the oral testimony given upon the stand in relation to it. It excludes the surrounding circumstances; it excludes whatever evidence there might have been in the language of the contract itself as bearing upon that subject."

If this instruction stood alone, there might be considerable force in the position of the appellants, but we find the court also gave the following instruction: "In examining this case you must do so from all the facts and circumstances in evidence before you. You should not be influenced by any statement of the counsel not supported by the evidence nor by any other matter or thing not presented for your consideration under the direction of the court. You are the exclusive judges of the evidence and of the credibility of the witnesses. The plaintiff cannot recover except upon a fair preponderance of the evidence where two witnesses testify directly opposite to each other on a material point, and are the only ones

who testify directly to the same point. You are not bound to consider the evidence evenly balanced or the point not proven; you may regard all the surroundings of facts and circumstances proven on the trial and give credence to one witness over the other if you think such facts and circumstances warrant it."

The court gave defendants' request No. 1 as follows: "If you find from the evidence that it was agreed between J. M. Pierce and the defendants Haley & Saunders that the proceeds of the sale were to be applied to satisfy the unsecured note and the balance upon the secured note, then you must find for the defendants."

Taking the instructions as a whole, we think they very fairly state the law of the case. Some other errors are assigned, but we do not think them material to the determination of the issues involved in this case.

After a careful consideration of the entire record and of all the proceedings disclosed by the transcript, we think the judgment should be sustained, and it is so ordered, with costs to respondent.

Ailshie, J., and Sullivan, J., concur in the affirmance of the judgment.