SLOAN STATE BANK, Appellee, v. B. M. STODDARD & SON et al., Appellants.

APPEAL AND ERROR: Reservation of Grounds—Failure to Except
1 to Instructions. A total failure to enter exceptions to instructions precludes the consideration of any assigned errors based on the giving of such instructions. (Section 3705-a, Code Supplement, 1913.)

CHATTEL MORTGAGES: Sales by Mortgagor—Unauthorized Sales
2 —Mortgagee Receiving Proceeds—Effect. A chattel mortgagee, by receiving a *part* of the proceeds of an unauthorized sale by the mortgagor of the mortgaged property, with knowledge of the source of the money, may ratify such unauthorized sale and thereby waive his lien and his right to proceed against the purchaser at such sale as for conversion. Evidence reviewed, and held insufficient to give a purchaser the benefit of the rule.

PRINCIPLE APPLIED: Plaintiff held a chattel mortgage on certain corn. The mortgagor, without authority, sold the corn to defendant. Defendant, when paying mortgagee for the corn, made mention of some obligations to plaintiff, and the mortgagee made some promise to take care of them as far as he could. Defendant at once mingled the purchased corn with other corn of his own. Within a day or two after the sale, plaintiff learned of the sale, and told defendant he would be held for the corn. Defendant at once phoned to the mortgagee and told him "to come in and settle" with plaintiff. The mortgagee came, and paid plaintiff $120 of the $588 received for the corn. Plaintiff had no positive knowledge of the source of this $120, but received it on the assumption that it was for the corn sold. *Held*, the receipt of the $120 did not work a ratification of the unauthorized sale or a waiver of the mortgage lien.

*Appeal from Woodbury District Court.*—W. G. SEARS, Judge.

SATURDAY, OCTOBER 21, 1916.

ACTION for the value of certain corn, covered by two chattel mortgages executed by F. A. Godsey and wife to plaintiff and sold by said Godsey to defendants, resulted in judgment as prayed. The defendants appeal.—*Affirmed.*

*C. N. Jepson, J. F. Stecker,* and *U. G. Whitney,* for appellants.

*Henderson & Fribourg* and *Buckley & Calderhead,* for appellee.

LADD, J.—F. A. Godsey and wife executed their promissory note, dated August 17, 1912, to plaintiff for $1,000, payable February 1, 1914, with interest at the rate of 8 per cent per annum, and also a chattel mortgage securing payment thereof, covering designated personal property and "all crops grown during 1913" on a quarter section of land therein described. Later on, they executed another promissory note for $320, dated September 23, 1913, and payable February 2, 1914, with interest at the same rate as the previous note. A chattel mortgage was executed at the same time, covering all the crop of corn then in the field on the farm. About November 21, 1913, defendants purchased corn raised on said premises during the season of 1913, valued at $558.77. Plaintiff learned of this a day or two afterwards, and notified defendants that they would be held for the corn. Thereupon, defendants telephoned Godsey to "come in and settle" with plaintiff. They had mentioned obligations to the bank, when paying Godsey for the corn, and he had promised to take care of them as far as he could, but he used a part for other purposes and paid plaintiff $120, on November 24th following. The cashier of plaintiff bank testified that nothing was said concerning the source of this money, and he did not know, though he surmised that it was a part of the proceeds of the corn, as Godsey had no other source from which to draw it. The latter testified that, when he took the money in, plaintiff's cashier "was a little bit miffed. I told him I had to pay some debts that I had. He was a little angry because I did not fetch it all over to him." Thereafter, by an arrangement between plaintiff and Godsey, all other property covered by the chattel mortgages was sold at auction and the proceeds applied on the notes, leaving a balance un-

paid of something over $200. Plaintiff, assisted by one of defendants, undertook to secure payment of this by inducing Godsey's father to sign his note therefor, including some other outstanding debts, but failed, and in this action sought to recover judgment therefor against defendants.

Several errors are assigned; but in argument, appellants reduced these to two, one of which, that relating to the consent to the sale of mortgaged property where and when the best price could be obtained, is disposed of by omission to file written exceptions to Instructions 5 and 6, submitting that issue to the jury.

1. Appeal and Error: reservation of grounds: failure to except to instructions.

The other presents the only debatable question in the case, i. e., whether plaintiff, in receiving the $120 payment, ratified the sale of the corn to defendants. Counsel for appellants requested the court to instruct the jury, in substance, that, if Godsey paid plaintiff a portion of the proceeds of the sale of the corn, and plaintiff knew that money so paid was derived from such source, and with such knowledge applied the same on the notes secured, this had the effect of ratifying the sale, and waived the lien of the mortgages on the corn. The court refused to so instruct, and, instead, advised the jury that the evidence failed to sustain the claim of ratification and waiver. The bank, as mortgagee, in receiving money in part payment of the indebtedness owing it, did only that which it had the right to do. But if, in so doing, it was aware that such money was the proceeds of the sale of the mortgaged corn, in the absence of other circumstances it might not receive and retain the money as the proceeds of the sale of said corn without, in effect, ratifying the sale. It might not take the proceeds of the sale, and at the same time insist on its lien on the property sold. Upon the tender of the proceeds of the corn by the debtor, the bank was put to its election of accepting the money so tendered by Godsey, or of rejecting this and asserting the lien of its

2. Chattel mortgages: sales by mortgagor: unauthorized sales: mortgagee receiving proceeds: effect.

mortgage. Such is the rule laid down by several courts where property burdened with mortgage or landlord's liens has been sold by the debtor with the knowledge of the lienholder. *McCollum v. Wood* (Tex. Civ. App.), 33 S. W. 1087; *Planters' Compress Co. v. Howard* (Tex.), 92 S. W. 44; *Noe v. Layton* (Ark.), 64 S. W. 880.

Surely a lienholder may not knowingly accept the proceeds of the sale and at the same time lay claim to the property sold. But this was not all that happened. Upon the purchase of the corn, defendants mingled it with their own, thereby putting it beyond the reach of the lienholder. The bank then could not have asserted its mortgage lien against the specific property. It must have relied on damages consequent on the conversion of the property covered by its mortgage. Upon ascertaining that defendants had appropriated the corn, it promptly advised them that it would hold them liable. Both the mortgagor, Godsey, and defendants, as the purchasers of the mortgaged property, then were liable to the bank, the former on the indebtedness evidenced by the notes, and the latter because of the conversion of property pledged for their security. This was the situation when defendants telephoned to Godsey to "come in and settle" with the bank, and later, when the bank received the money.

The rights and liabilities of the parties had become fixed. Receipt of the payment satisfied the obligation of the debtor *pro tanto,* and to that extent reduced the liability of defendants. The course of the bank was beneficial to them, and within its right to receive anything owing to it. Ratification of the unauthorized sale might not be inferred from acquiescence therein or assent thereto, for the bank previously had expressly repudiated it by advising defendants that they would be held for the conversion of the mortgaged property. As against such repudiation, the subsequent receipt of money, though derived from the sale of the corn converted by defendants, cannot and ought not to be construed as an acquiescence therein or ratification thereof, but the rather by way of satis-

faction *pro tanto* of the claims against both the debtor and those having converted the mortgaged property. All done thereafter was in the interest of defendants, and did not constitute a defense. The court rightly ruled that the evidence was not such as to carry the issue of ratification to the jury.— *Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.