## Tonnar *v.* Washington & Issaquena Bank.*

(Division A.   Oct. 12, 1925.   Suggestion of Error Overruled Nov.

9, 1925.)

[105 So. 750.   No. 24984.]

Chattel Mortgages. *Mortgagee of cotton crop, who expected mortgagor to sell it and account for proceeds, cannot recover value of cotton from purchaser thereof without notice, although mortgagor did not account for proceeds.*

When the evidence discloses that a mortgagee did not expect a mortgagor to whom he has loaned money secured by a mortgage on cotton to be grown to turn the cotton over to him, but expected the mortgagor to sell the cotton and account to him for the proceeds thereof, the mortgagor cannot recover the value of the cotton from a purchaser thereof from the mortgagor without notice, although the mortgagor failed to account to the mortgagee for the proceeds thereof.

*Headnote 1.   Chattel Mortgages, 11 C. J., Section 339.   Consent to sale of property by mortgagor after mortgage is given as waiver of lien of chattel mortgage, see note in 43 L. R. A. (N. S.) 302; 5 R. C. L., p. 445.

Appeal from chancery court of Washington county. Hon. E. N. Thomas, Chancellor.

Suit by the Washington & Issaquena Bank against B. Tonnar.   Judgment for plaintiff, and defendant appeals. Reversed and dismissed.

*Brunini & Hirsch,* for appellant.

The lower court was in error in decreeing the sum of two thousand six hundred seven dollars and fifty cents, with six per cent interest from October 4, 1920, and aggregating, principal and interest, three thousand one hundred forty-three dollars and eighty-two cents, because Mr. Tonnar could not be held since he did not pur-

chase the cotton for more than the cotton brought, to-wit seven hundred forty-three dollars and sixty-five cents.

The trustee, under the deed of trust, never demanded the cotton of Mr. B. Tonnar, but Mr. Pat Sharkey did demand the ten bales of cotton, but this was after the death of Mr. Thames, and after the bottom had dropped out of the market price of cotton, and the assumption is that no more would have been gotten for the cotton at the time of the demand of Mr. Pat Sharkey than what the cotton finally sold for, the appellee bank having failed to make any proof as to what the cotton was worth at the time of the demand.

The cotton was rightfully in the hands of Mr. B. Tonnar for sale through H. & C. Newman, as it was brought there by Mr. T. M. Thames and approved especially by Mr. B. J. Tonnar, the president of the appellee bank, and impliedly by Mr. Pat Sharkey, the vice-president, who made no objection to the same. But no decree should have been entered against him even for the seven hundred forty-three dollars and sixty-five cents, the net amount which the cotton brought. No other conclusion can be reached based upon the facts and the law applicable thereto.

Mr. Thames, on the suggestion of Mr. B. Tonnar, agreed to ship the cotton to H. & C. Newman, with the understanding that Mr. B. Tonnar would advance as much as fifty cents a pound on the cotton; that if it brought more, the difference would be divided; that if it brought less the loss should be that of Mr. Thames.

Mr. Thames, on Monday, October 4, 1920, himself shipped the cotton to H. & C. Newman, as the bill of lading shows, in the name of B. Tonnar. On the next day, according to the testimony of Mr. B. J. Tonnar, Mr. Thames told him what he had done, *and he then and there told him that that was all right.*

Now, what Mr. Thames did was done with the approval of Mr. B. J. Tonnar, the president of the appellee bank, and before Mr. B. Tonnar had made the final advances

of one thousand four hundred twenty-one dollars and one cent, almost twice the amount which the cotton brought, but that was not all. Mr. Pat Sharkey himself, had not only released the cotton seed to Mr. B. J. Tonnar, but had permitted the first eleven bales of cotton to be delivered by Mr. Thames to O. B. Crittenden & Company for sale, and when asked if it was not done with his consent, his answer was, "We didn't object to it." This conduct on the part of the appellee bank was a waiver of its lien. *Pratt* v. *Maynard,* 116 Mass. 388.; *Luther* v. *Lee et al.,* 204 Pac. 365; *Great Northern State Bank* v. *Ryan,* 292 Fed. 10. A case directly in point is *Seavey & Sons* v. *Godbold,* 99 Miss. 113. A more recent case is that of *Phillips* v. *Thomas,* 128 Miss. 729.

In *Cole-McIntyre-Norfleet Co.* v. *Bu Bard,* 135 Miss. 20, the facts were the converse in the instant case. In that case it was held that the mortgagee did not waive his lien upon the mortgaged personal property where the mortgagor places it in the hands of a cotton association to be sold advantageously *without the knowledge or consent of the mortgagee.* But that case only shows that if the facts were as here, this honorable court would have held a waiver in that case.

In principle, *McCormick* v. *Bloom,* 75 Miss. 81, is in point. There the manager of a plantation shipped cotton produced thereon under his management to be sold in the market of a neighboring town. By doing so, he was held to have waived his lien as an employee, and that he could not maintain his suit for a conversion of the cotton against a factor who had received the cotton of the consignee and sold the same and applied the proceeds to the credit of the plantation, or to that of the owner.

In conclusion, we submit that the appellee bank, under the facts in this case, has waived its lien, and is not entitled to recover anything from appellant, and that this case should not only be reversed, but judgment be entered here for appellant.

*Wasson, Nelson & Wasson,* for appellee.

If there can be any merit in appellant's contention, it must be founded upon the claim that the bank, in some way, waived its lien of the trust deed.  For if appellant purchased the cotton and paid two thousand six hundred seven dollars and fifty cents, on October 4, 1920, certainly he was liable to account to the bank for that amount of money, *unless* the bank waived its lien in some way.

Counsel for appellant, in discussing the acts and conduct of Pat Sharkey, cashier of the bank, and B. J. Tonnar, president of the bank, seem, inadvertently, to have misconstrued their acts and conduct.

The testimony of Pat Sharkey and B. J. Tonnar shows that they were misled and deceived by both B. Tonnar and T. M. Thames as to what disposition had been made of the cotton.  The testimony clearly shows that both Sharkey and B. J. Tonnar were kept in the dark as to the facts in connection with the dealings between B. Tonnar and Thames.

To constitute a waiver it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an intention to relinquish it.  *He must have full knowledge of the facts.* When waiver is set up as a defense, the burden of proof devolves upon the party claiming the waiver to prove the facts on which he relies for such waiver  and the waiver must be clearly proved.

We say that the record discloses the fact that neither Sharkey, the cashier of the bank, nor B. J. Tonnar, the president of the bank, had any knowledge of the dealing between appellant and Thames.  The record further shows that they did not have any information as to what was transpiring between appellant and Thames.

Surely, a waiver cannot be invoked on the *information* which Sharkey and B. J. Tonnar had in connection with the cotton.  They did not have *information. They had misinformation.*

The fact that appellant sustained a heavy loss on the cotton (whether he has to pay the decree in this case or not) has nothing to do with the merits or the law of this case.   Unless it shall appear to this court, from clear proof, that Sharkey or B. J. Tonnar, the officers of the bank, *had knowledge of the facts* as to the disposition of the cotton by Thames to appellant, the decree of the learned chancellor must be affirmed.   And there is no proof in this record, clear or unclear, that they, or either of them, had any knowledge or information which can be invoked as a waiver of the lien of the recorded deed of trust.

We respectfully submit that the decree appealed from should be affirmed.

Argued orally by *Jno. W. Brunini,* for appellant.

SMITH, C. J., delivered the opinion of the court.

The appellee sued the appellant for and recovered the value of cotton on which the appellee had a mortgage lien. The cotton was produced by T. W. Thames, who had given the appellee a mortgage thereon.   Thames, pursuant to an agreement with the appellant, but without the knowledge of the appellee, shipped the cotton to H. & C. Newman, New Orleans, La., for the appellant's account, and the appellant paid him therefor.   Thames used the money received by him for the cotton in paying debts due by him to others than the appellee.   The appellant had no actual knowledge of the appellee's deed of trust, but he did have constructive notice thereof because of the fact that it had been duly recorded in the office of the chancery clerk.   One of the questions presented by the record, and the one on which the case must turn, is:   Was Thames authorized by the bank to sell the cotton for the value of which the appellant is sued?   If he was authorized so to do, the appellant cannot recover.   The appellee's cashier, Sharkey, on whose evidence the authority *vel non* of Thames to sell the cotton must be determined, testifies

in substance as follows: That Thames shipped ten bales of cotton covered by the bank's deed of trust to O. B. Crittenden & Co., cotton brokers at Greenville, Miss. The bill of lading for the cotton was forwarded by Thames to the bank, and when the cotton was sold by Crittenden & Co. the proceeds thereof were paid by it direct to the bank. Thames died between the shipment of the cotton and the sale thereof by Crittenden & Co. Shortly after the cotton here in question was shipped by Thames to New Orleans, Thames told Sharkey that he had shipped the cotton to New Orleans, but did not tell him to whom it was shipped, nor that it had been shipped for the appellant's account. Sharkey made no objection to the shipment, stating that he supposed Thames intended for the cotton to be sold in New Orleans and would, when it was sold, account to the bank for the proceeds thereof. Thames some time thereafter told Sharkey to whom and for whose account the cotton was shipped. Quoting now from Sharkey's testimony *verbatim*:

"Q. You did not give him permission to dispose of that cotton? A. We never object to any one disposing of the cotton and turning over the proceeds to us.

"Q. It is only when the proceeds are not paid over to you that there is any reason or cause of complaint? A. Yes, sir.

"Q. But he had permission to do as he had done, to sell the cotton and turn the proceeds over to you? A. There would have been no objection to that.

"Q. And both of you and he understood that? A. I guess he did. . . .

"Q. Mr. Brunini asked you yesterday whether or not you agreed with Mr. Thames that he might sell the cotton, and, as I remember it, you answered that you did not, but that you made no objection to any of your customers who mortgaged cotton to you selling their cotton if you got the money—what do I understand you to mean by that answer? A. I meant that we never expect a customer to whom we advance money on property to

actually turn the cotton over to the bank for the bank to sell. We expect them to sell the cotton in such a way as suits them, and turn over the proceeds to us until the indebtedness to us is satisfied.''

It is manifest from this evidence that not only would the appellee have ratified the sale of the cotton by Thames had he accounted to it for the proceeds thereof, but that it expected and therefore authorized Thames to sell the cotton and to account to it for the proceeds. The appellee's complaint, therefore, is not that Thames sold the cotton, but that he failed to account to it for the proceeds thereof, and with this complaint the purchaser of the cotton has no concern. He received the cotton because of the bank's consent to its sale, free from the lien of the bank's deed of trust. *Phillips* v. *Thomas,* 128 Miss. 729, 91 So. 420; *Judd* v. *Delta Grocery & Cotton Co.,* 133 Miss. 866, 98 So. 243.

The judgment of the court below will be reversed and the bill dismissed.

*Reversed and dismissed.*