## BELL v. KASSAHN
(No. 1501; Sept. 25, 1928; 270 Pac. 541)

*F. E. Anderson,* for appellant.

*G. R. McConnell,* for respondent.

BLUME, Chief Justice.

This is an action in replevin brought by A. H. Bell against August Kassahn. The court found in favor of the defendant, and the plaintiff has appealed. The parties will be named as in the court below.

Plaintiff loaned one Jack Wagner some money with which to buy 125 head of sheep, and took a note representing the loan for $1350, dated November 25, 1924 and due one year after date. The note was secured by a chattel mortgage on the sheep bought by Wagner. The mortgage was duly filed of record. One hundred of these sheep were sold to the defendant on the 19th day of October, 1925, at a quasi-public sale, after advertisement in a newspaper in Rock River, but plaintiff denied any knowledge of the advertisement. Kassahn paid Wagner the sum of $1000, or $10.00 per head, although the testimony shows that the sheep were not worth more than from $8.00 to $9.50 per head. On October 21, 1925, two days after this sale, Wagner wrote to plaintiff that he was called to the deathbed of an uncle, and further stated: "I have a bank draft that I will deposit in bank and have the bank notify you at once of same." A few days thereafter, plaintiff, thinking that the bank referred to in the letter might be the Citizens State Bank of Rock River, went to that place, and had a conversation with Mr. Niederjohn of that bank, in which he discovered that the money mentioned in the letter was not in that bank, but he learned the facts of the sale of the sheep

to defendant for the amount above mentioned. Plaintiff then attempted to find Wagner's whereabouts and traced him, among other places, to Morgantown, West Virginia. Subsequently a warrant of arrest was issued for Wagner, presumably for selling mortgaged chattels without the consent of the mortgagee. The information for that purpose was sworn to by the defendant, although, according to the testimony of Mr. Downey, the plaintiff was instrumental therein, or knew of it. The sheriff thereupon attempted to find Wagner's exact whereabouts. A few weeks afterwards, and about December 1st, 1925, plaintiff received a draft for $1000.00 from a bank in Morgantown, West Virginia, unaccompanied by any letter or any directions. Plaintiff credited it on the $1350 note, and communicated the fact to Niederjohn, and perhaps others, as a result of which the warrant of arrest heretofore mentioned was never attempted to be served. Defendant's testimony seems to indicate that plaintiff directed, or suggested, the dropping of the criminal prosecution, but plaintiff denied that. This action was brought after an attempt to get defendant to settle the balance still due on the note in the sum of $274.09 and after a refusal to do so.

The only point argued by counsel for the appellant is that Bell did not know where the $1000 paid to him came from; that he had no knowledge of the fact that this was the purchase money of the sheep received from the respondent, and that he is not, accordingly, estopped from pursuing the mortgaged property. We do not, however, think that this contention can be sustained. While Mr. Bell attempted to give the court to understand that he did not know the source of the money, he nevertheless admitted that "the supposition was that it was for the sheep." He endorsed the money on the note which had been given by Wagner when he bought the sheep, although he had another note of Wagner's which represented another loan of $950, almost unmistakably indicating that appellant knew the source of the money. He knew, in all probability, that

Wagner had little property aside from his homestead—on which appellant had a mortgage—and aside from the sheep in controversy, and that about the only source of the $1000 was from the sale of the sheep to Kassahn. We cannot credit the myth of a rich uncle which appellant sought to inject into the case. Appellant knew that the sheep had been sold to Kassahn for the sum of $1000; Wagner had written to Bell that he would have some money for him in a bank, without indicating what bank; the $1000 came from a bank in a town in West Virginia, where Wagner had gone, and it came a comparatively short time after, as Mr. Downey testified, appellant had been instrumental in having a warrant of arrest issued for Wagner. These and other circumstances in the case, which it is unnecessary to give in detail, convinced the trial court, and we think rightly so, that when appellant received the $1000, he knew that it came from Wagner and represented the purchase price of the sheep sold to Kassahn.

We must, accordingly, apply the rule herein, that

"A mortgagee is estopped to claim the property as against a purchaser, where he accepts the proceeds of the sale with knowledge of the source from which they came." 11 C. J. 628.

In Emerson etc. Implement Co. v. Faulkner, 119 Kans. 807, 241 Pac. 431, it is said:

"Where the mortgagee with the knowledge of the sale, receives the proceeds thereof, it is a ratification, and the purchaser takes free from the mortgage lien."

To the same effect are: New England Mtg. Co. v. Elevator Co., 6 N. D. 407, 71 N. W. 130; Money et al., v. First National Bank, 209 Ala. 298, 96 So. 230; Warrick v. Rasmussen, 112 Neb. 209, 199 N. W. 544; Parker v. Harrell, 188 N. C. 337, 124 S. E. 575; Wilkins-Ricks Co. v. Welch, 179 N. C. 266, 102 S. E. 316; Sloans State Bank v. B. M. Stoddard & Son, 178 Ia. 104, 159 N. W. 636, L. R. A. 1917

A 1261 and note thereto appended; Hanks v. State Bank, (Tex. Civ. App.) 265 S. W. 245; cases in 11 C. J. 628. The ratification may be shown by proof that the mortgagee was possessed of facts sufficient from which it could be reasonably inferred that he knew that the money which he received came from and represented the sale of the mortgaged property. Lafayette County Bank v. Metcalf, 29 Mo. App. 384. The judgment of the District Court must accordingly be affirmed and it is so ordered.

*Affirmed.*

KIMBALL and RINER, JJ., concur.