Hawkins *v.* Nash *et al.*

(Division B.   March 28, 1932.   Suggestion of Error Overruled, May 9, 1932.)

[140 So. 522.   No. 29792.]

**Frank A. Critz**, and **B. H. Loving**, both of West Point, for appellant.

**McClellan & Tubb**, of West Point, for appellees.

Anderson, J., delivered the opinion of the court.

Appellant, as trustee in a deed of trust in favor of the Bank of West Point, filed his bill against appellees in the chancery court of Clay county praying an injunction against appellees from disposing of or removing three bales of cotton, and from disposing of the warehouse receipts therefor. On the fiat of the chancellor an injunction bond was given, and a writ of injunction issued and served on the appellees. On motion of appellees F. M. Crump & Co. and Federal Compress & Warehouse Company, the injunction was dissolved. The cause was tried on motion to dissolve, on original bill, answers, cross-bills, answers thereto, and proofs. The decree dissolving the injunction dismissed the bill and awarded appellees damages on the injunction bond. From that decree appellant prosecutes this appeal.

Appellee Nat Nash was a tenant on the farm of A. B. Norris. He gave a deed of trust to the Bank of West Point to secure an indebtedness to the bank of between three hundred dollars and four hundred dollars. By the

deed of trust he conveyed certain personal property, and in addition the agricultural products to be grown by him on Norris' farm during the year 1928. Appellant was named as trustee in the deed of trust. Appellee Nat Nash sold three bales of the cotton produced by him, which was covered by the deed of trust, to appellees F. M. Crump & Co. Before selling the cotton he had it deposited in warehouses at West Point and Aberdeen and held warehouse receipts therefor. Appellees F. M. Crump & Co. bought the cotton and paid appellee Nash for it and took up from him the warehouse receipts. At the time appellees F. M. Crump & Co. purchased the cotton and paid appellee Nash for it, they had no actual knowledge of the existence of the deed of trust in favor of the Bank of West Point. However, the deed of trust was on record, and they were affected with constructive notice thereof.

Appellant's contention is that appellees F. M. Crump & Co. bought the three bales of cotton subject to the deed of trust of the Bank of West Point, and they were therefore liable to deliver the cotton up to appellant for foreclosure under the deed of trust, or, failing to do so, they were liable for the value of the cotton. Appellees F. M. Crump & Co. contend, and the chancellor so found, that the three bales of cotton were freed from the deed of trust in favor of the Bank of West Point because the bank had authorized appellee Nat Nash to sell the cotton and pay the proceeds of sale on his indebtedness secured by the deed of trust. The issue of fact, therefore, was whether or not appellee Nash was authorized by the Bank of West Point to sell the cotton and turn over the proceeds thereof to the bank on his indebtedness secured by the deed of trust. The chancery court found that issue of fact in favor of appellees F. M. Crump & Co., and based such finding of fact on the testimony alone of Mr. Yates, president of the Bank of West Point, as shown by the opinion of the chancellor made a part of the record in the case.

Appellant argues that the chancellor's findings of fact were against the overwhelming weight of the evidence. Mr. Yates testified that, shortly after the indebtedness secured by the deed of trust was due, appellee Nash came in to see him about the matter. On cross-examination, Mr. Yates testified, in part, as follows:

"Q. When he came in and talked to you about this note, and you told him to get out his cotton and pay the note, what did you expect him to do? A. I expected him to pay the note.

"Q. Did you expect him, if when you told him to go cut and sell his cotton, to bring his check to you? A. I couldn't tell you just what I had in my mind at the time.

"Q. I understand, I know you have a great many of these things? A. Cases like that, the landlord frequently comes in and pays the note and sometimes the man comes in, but I am honest in saying if Nat had come in and asked to take this cotton down and sell it, I think we would have allowed him that privilege.

"Q. Isn't that what you intended for him to do when you told him to go and get his cotton out and then go ahead and pay the note? A. Yes, sir, that would have been all right with us.

"Q. That is what you expected him to do and that is what you intended to convey to him? A. I don't know.

"Q. Isn't that what that language would mean? A. Well possibly so, yes, sir.

"Q. Did you expect, to the contrary, that he would bring the cotton in to you? A. I did not expect the bales of cotton, no, sir.

"Q. Were you expecting anything else but that Nat Nash would carry that cotton, either to the warehouse and store it, and get the receipts, or else sell the cotton and in turn, bring the money to you. You did not expect anything else but that, did you? A. Unless it might come through the landlord. . . . I expected the note to be paid out of the proceeds of the cotton."

We agree with the chancellor that Mr. Yates meant that he agreed for the Bank of West Point that appellee Nash should sell the cotton and account to the bank for the proceeds thereof. Where a mortgagee does not expect the mortgagor to whom he has loaned money, secured by mortgage on cotton to be grown, to turn the cotton over to him, but expects the mortgagor to sell the cotton and account to him for the proceeds thereof, the mortgagee cannot recover the value of the cotton from the purchaser from the mortgagor who has no actual notice of the mortgage, although he has constructive notice by virtue of the fact that the mortgage is duly recorded. Tonnar v. Washington & Issaquena Bank, 140 Miss. 875, 105 So. 750. We think that case is in point and decisive of the question in favor of the appellees.

Affirmed.