(No. 5863. May 5, 1933.)

MARY M. HOPKINS, Respondent, v. JOHN HEMSLEY and BERTHA HEMSLEY, Defendants; SPERRY ELEVATOR & STORAGE CO., Appellant.

[22 Pac. (2d) 138.]

C. L. Hillman, and DeVine, Howell & Stine and Lewis J. Wallace, for Defendant Sperry Elevator & Storage Company, Appellant.

C. W. Poole, for Respondent.

GIVENS, J.—Defendants Hemsley and wife gave respondent a chattel mortgage on certain crops to be grown on respondent's land, which mortgage was duly filed. The crops were, with respondent's knowledge, harvested, and delivered by Hemsley to appellant, Sperry Elevator and Storage Company, hereafter referred to as appellant company, and shipped by them to their warehouse in Ogden, Utah. Respondent did not know, however, until December, that the crops had been sold by Hemsley to appellant company, whereupon, in the succeeding January she promptly brought this action for their conversion and foreclosure of the chattel mortgage, and from a denial of a motion for nonsuit, and judgment in her favor, this appeal is taken.

Appellant contends respondent consented to, and by her conduct ratified, the sale, and that there was no conversion of the crops in question.

Section 44–1007 provides that shipment of mortgaged property (chattel) out of the county where the mortgage is filed does not affect the lien thereof unless written consent is given, in which event the lien is in abeyance until a copy

of the mortgage is filed in the county, into which the goods are shipped, or in the office of the Secretary of State. No written consent was given, so respondent did not lose her lien by such shipment. (*Young v. Boise Payette Lumber Co.*, 45 Ida. 671, 264 Pac. 873.)

■ Section 44–1016, I. C. A., provides that a sale of the mortgaged chattels does not deprive the mortgagee of the mortgage lien unless consent be shown, written or proved by a preponderance of other evidence than of the interested parties. Appellant concedes there was no written consent, but urges that the delivery of the crops to appellant company for shipment out of the state, under the circumstances disclosed by the record, amounted to at least implied consent of the sale. The only evidence relative to consent was given by appellant's former agent who bought the wheat for appellant company, and the mortgagor and mortgagee, hence there is no evidence of other than interested parties, except we take the evidence of respondent as outside the ban of the statute because in the nature of admissions against interest.

There was no evidence of a substitution of the mortgagor's bare promise for the mortgage, nor was there evidence that the mortgagee accepted the mortgagor's promise to pay part of the proceeds for a release.

*Valley Bank v. Hillside Packing Co.*, 91 Cal. App. 738, 267 Pac. 746, was based entirely on sec. 2972 of the Civil Code of California:

"The lien of a mortgage on a growing crop continues on the crop after severance, whether remaining in its original state or converted into another product, so long as the same remains on the land of the mortgagor," which we do not have and never did have, and which is expressly contrary to sec. 44–1007, I. C. A.

■ Even a cursory consideration of our statutes relative to chattel mortgages indicates that possession by the mortgagor or others, where the mortgage is properly authenticated and filed, is contemplated, but the lien preserved. (Secs. 44–1005, 44–1008, I. C. A.; *Meyer v. Munro*, 9 Ida. 46, 71 Pac. 969; *Guthrie v. Ensign*, 36 Ida. 673, 213 Pac. 354.)

Therefore possession, even prior to the enactment of sec. 44–1016 in 1931, was not controlling, and under sec. 44–107 diligence is of no moment, because if consent to the sale be given, the lien is lost; if not given, the lien persists because of the statute, and cases decided in this state prior to 1931, when the provisions of sec. 44–1016 as to the proof necessary to show consent, became law, or in jurisdictions where no such requirement prevails, are of course not in point.

 On motion for nonsuit, all reasonable inferences are to be resolved in favor of plaintiff, and unless we can say there were none in her favor, the nonsuit was properly denied. (*Maryland Casualty Co. v. Boise Street Car Co.*, 52 Ida. 133, 11 Pac. (2d) 1090; *First Nat. Bank of Hagerman v. Stringfield*, 40 Ida. 587, 235 Pac. 897; *Independent Irr. Co., Ltd., v. Baldwin*, 43 Ida. 371, 252 Pac. 489; *Porter v. Pincock*, 44 Ida. 235, 256 Pac. 93; *Scrivner v. Boise Payette Lumber Co.*, 46 Ida. 334, 268 Pac. 19.)

 Conceding that under the 1931 amendment statements, acts or evidence by the mortgagee would be sufficient, they must show consent to a sale, not mere shipment or delivery, as pointed out in appellant's own authorities.

As said in *Stockyards Nat. Bank v. B. Harris Wool Co.*, 316 Mo. 426, 289 S. W. 623:

"The evidence is conclusive . . . . and uncontradicted that plaintiff (mortgagee) failed to look after its mortgage security, allowing Wrathall (mortgagor) to clip the wool to *sell* or consign it after it was clipped, and to receive advances thereon." (Italics ours.)

In *Ramsay v. California Packing Corp.*, 51 Cal. App. 517, 201 Pac. 481, the court said:

"Emerson admitted that he knew that certain portions of the crop had been removed from the premises and *sold*, and that the mortgagees intended to remove and *sell* the remainder; yet . . . . took no steps to prevent such removal and *sale*." (Italics ours.)

Let us take the testimony of respondent quoted by appellant in its brief, and relied upon to show knowledge of, or consent to, a sale:

"A. I supposed he (Hemsley) was shipping to the Sperry people, delivering to them, *because I hadn't granaries to hold the grain* . . . . they moved it as they threshed . . . . they hauled it away . . . . I supposed they were hauling it to the cars, and shipping to the Sperry Elevator & Storage Co."

No word of sale; only shipment and delivery.

The testimony quoted clearly allowed the trial court to consider that no sale was in respondent's mind when the grain was delivered to appellant company, and shipped by them to Ogden, hence *Denno v. Standard Acceptance Corp.*, 277 Mass. 251, 178 N. E. 513, not under a statute like sec. 44-1016, I. C. A., and similar authorities, cannot avail appellant.

*Tonnar v. Washington & Issaquena Bank,* 140 Miss. 875, 105 So. 750:

"Sharkey (mortgagee) made no objection to the shipment, stating he supposed Thames (mortgagor) intended for the cotton to be *sold* in New Orleans, and would, when it was sold, account to the bank for the proceeds thereof," and never objected to "anyone disposing of cotton and turning over the proceeds to us."

There is no such situation here. The nib of this phase is not what result follows if consent to a sale be shown, but solely whether the trial court was justified in finding and concluding consent was not shown under the restrictions of sec. 44–1016, I. C. A.

*Manley Bros. Co., Inc., v. Somers,* 100 Vt. 439, 138 Atl. 735, says: "A waiver is the intentional relinquishment of a known right," and all the evidence herein is overwhelmingly to the effect that respondent did not intend to relinquish her lien at all.

The rule in *Smith v. Washburn-Wilson Seed Co.,* 40 Ida. 191, 232 Pac. 574, is correct but there are no facts here to make it applicable.

In *Hawkins v. Nash,* 163 Miss. 500, 140 So. 522, the mortgagee stated:

"If Nat (mortgagor) had come in and asked to take this cotton down and *sell* it, I think we would have allowed him that privilege." (Italics ours.)

Respondent said no such thing herein, and no one testified that she did.

In *Williamson v. Lesser-Goldman Cotton Co.*, 169 Ark. 1212, 277 S. W. 347, the mortgagee was present in the streets when the mortgagor was selling the cotton, and made no objection. Sale, not delivery, is the basis of the decision.

*Harding v. San Saba Nat. Bank*, (Tex. Civ. App.) 13 S. W. (2d) 121:

"I (mortgagee) expected Mr. Crain (mortgagor) to *market* the pecans."

As to ratification, the same defect exists in the application of appellant's authorities, as, for instance, *Emerson-Brantingham Implement Co. v. Faulkner*, 119 Kan. 807, 241 Pac. 431: "When the mortgagee with the knowledge of the sale receives the proceeds thereof, it is a ratification," and similar language in *Warrick v. Rasmussen*, 112 Neb. 299, 199 N. W. 544; *Wilkins-Ricks Co. v. Welch*, 179 N. C. 266, 102 S. E. 316; *Parker v. Harrell*, 188 N. C. 337, 124 S. E. 575; *Bell v. Kassahn*, 39 Wyo. 152, 270 Pac. 541; *Hanks v. First State Bank*, (Tex. Civ. App.) 265 S. W. 245; *Wade v. Cornish*, 23 Okl. 40, 99 Pac. 643; *Sloan State Bank v. B. M. Stoddard & Son*, 178 Iowa, 104, 159 N. W. 636, L. R. A. 1917A, 1261.

Contrary to appellant's contention that the crops belonging to respondent and Hemsley being commingled by appellant company, the burden was on her to show the proper segregation, the rule places such burden on the conversioner. (*Mahoney v. Citizen's Nat. Bank*, 47 Ida. 24, 271 Pac. 935; *Servel v. Corbett*, 49 Ida. 536, 290 Pac. 200; 12 C. J. 498; 5 R. C. L. 1051, 1052.)

The record discloses that neither respondent nor Hemsley had a place to store the wheat at all, and the appellant company had no place to store it in Idaho, and there is nothing to show respondent should have considered it proper, or the customary thing not to store or house it,

hence the shipment out of the county and state was as consistent with its being so sent for storage, as sent resultant to a sale.

Payment by appellant company, after its shipment, of part of the purchase price to respondent was as consistent with its recognition of her lien thereon, as with her consent to its prior sale by Hemsley to appellant company, about which she had no knowledge previous to December.

Appellant company was charged with notice and knowledge of the mortgage (*Hansen v. Haley,* 11 Ida. 278, 81 Pac. 935; *Adams v. Caldwell Milling etc. Co.,* 33 Ida. 677, 197 Pac. 723), and it was at least as incumbent upon them to secure respondent's consent to the sale of the grain and release of the mortgage as it was upon her to question its shipment when she knew nothing of the sale; and shipment alone would not, under sec. 44–107, I. C. A., and the circumstances disclosed here, compel the trial judge to find she knew a sale had been made, rather than to the contrary.

There were not only inferences and legitimate deductions from the evidence justifying the trial court's denial of the nonsuit, but cogent circumstances sustaining his entry of judgment in favor of respondent, that consent to the sale was not shown, under the statute, and under the well-known rule that where there is sufficient evidence, though conflicting, to sustain the judgment the same is affirmed. Costs to respondent.

Budge, C. J., and Morgan, Holden and Wernette, JJ., concur.