## PHILLIPS *v.* THOMAS.

[91 South.  420.  No. 22520.]

LANDLORD AND TENANT.  *Landlord who habitually permits share crop tenant to sell products cannot enforce landlord's lien against or recover value of products from good faith purchaser.*

A landlord may not enforce his landlord's lien against a purchaser in good faith from the tenant, where the landlord intrusts the tenant with the carrying of the products to market and the selling of them for the landlord.  And where a landlord habitually permits the tenant to sell the products and bring the proceeds to the landlord, he makes such tenant his agent for the sale of the products, and if the agent fails to pay over the funds so derived from such sale, the landlord cannot recover of the buyer the value of the products in such case.

APPEAL from circuit court of Lowndes county.

HON. THOS. B. CARROLL, Judge.

Suit by J. E. Thomas against F. P. Phillips.  Judgment for plaintiff, and defendant appeals.  Reversed and rendered.

*John F. Frierson,* for appellant.

The case at bar is a much stronger case against the landlord than the case of *Seavey* v. *Godbold,* to which we call the court's attention, 54 So. 838, 99 Miss. 113. In that case Godbold, the landlord, permitted the Keenes, tenants, to take the samples of the cotton to several merchants and they finally sold it to the appellant Seavey. Appellants paid Luther Keene for two bales and at the instance of Joe Keene, one of the tenants, they paid appellee one hundred dollars for the rent. At the time of the settlement, appellant made no demand for the cotton sold by Luther Keene, nor did he assert any claim to it because of any lien. Godbold had advanced certain supplies and demanded settlement for same out of Luther Keene, failing to get which he sued appellant. It was the contention of appellants that Godbold had waived his lien by permitting the tenant to market the cotton and receive payment therefor without objection. Godbold said: "If consenting for him to try the market that day and find a sale for it waives it, I waive it. Q. Then you did not waive it? A. No, sir, I did not."

The case at bar is much stronger in favor of Phillips than that case was in favor of Seavey. In that case the court said: "What Godbold did, amounted to a virtual appointment of the Keenes as his agents to make a sale of the cotton on which he had a landlord's lien, and if they failed to carry out the trust thus reposed in them, and make due return of the proceeds, innocent parties cannot be made to suffer on that account. *Seavey & Sons,* v. *Godbold,* 54 So. 838.

It was decided in the case of *Cohn* v. *Smith,* 2 So. 245, 64 Miss. 816, that the right to bring an action in the case on such statute is waived where the landlord consents to the sale of cotton by the lessee although the purchaser may have no knowledge of such consent and it is without consideration. See, also, 16 R. C. L. 999; 5 R. C. L. 458, 11 C. J. 674; *McCormick* v. *Blum,* 21 So. 707.

It is not right, either legally or morally for a landlord to give his consent for the tenant to dispose of his own cotton and because the tenant fails in the trust reposed in him to return and account for the proceeds, then to proceed against an innocent purchaser. The case should be reversed and judgment given for the appellant by the supreme court, and this we respectfully ask.

*Wm. P. Stribling,* for appellee.

It will be noted in the cases cited by counsel for appellant, and the cases hereinafter cited by counsel for appellee, the court uses the word consent instead of the word permit in rendering the opinion, as there is quite a difference and distinction in the two; however, counsel for appellee desires to say that the facts in the cases cited by counsel for appellant are not parallel with the facts in the case under discussion.

In *Newman et al.* v. *Bank of Greenville et al.,* 5 So. 753, COOPER, J., in rendering the able opinion of the court, recites fully the origin and purpose of the lien extended to the landlord in Mississippi beginning with the Acts of the legislature of 1867, p. 569; and the Acts of 1876, p. 109, when the subject was received by the legislature and by subsequent acts of the legislature, the lien of the landlord has been broadened and strengthened. See Miss. Code 1906, section 2332—"Every lessor of land shall have a lien on the agricultural products of the leased premises, however, and by whomever produced, to secure the payment of the rent and of money advanced to the tenant, and the fair market value of all advances made by him to his tenant for supplies for the tenant and others for whom he may contract, and for his business carried on upon the leased premises; and this lien shall be paramount to all other liens, claims or demands upon such products; and the claim of the lessor for supplies furnished may be enforced in the same manner and under the same circumstances as his claim for rent may be, etc."

The lien thus given to the landlord embraces money advanced to the tenant, as well as provisions, feed, stock, etc., to make the crop with. See *Trimble* v. *Durham,* 70 Miss. 295, 12 So. 207, and the removal of the agricultural products from the leased premises by the tenant does not affect the landlord's lien. See *Henry* v. *Davis,* 60 Miss. 212, and the lien may be enforced after its termination. *Fitzgerald* v. *Fowlkes,* 60 Miss. 270, and the landlord's lien provides against a *bona-fide purchaser for value.* Newman v. *Bank,* 66 Miss. 323-337, 5 So. 753, and the landlord may assert his lien against the products or the purchaser of same, with or without notice of such product. *Ball* v. *Sledge,* 82 Miss. 749, 35 So. 447. Ignorance as to the tenancy by a purchaser nor false statement by the tenant as to his right to sell the agricultural products grown in the leased premises, will defeat the landlord's claim. *Warren* v. *Jones,* 70 Miss. 202, 14 So. 25.

In *Eason et al.* v. *Johnson,* 69 Miss. 371, 12 So. 446, the court held that the "right of the landlord to recover from one to whom the agricultural products grown on the demised premises have been sold by the tenant, is not affected by the want of knowledge by the purchaser of the fact that the rent is due and unpaid. The lien exists by virtue of a positive law, and the rule of *caveat emptor* applies to all who purchase from the tenant, in other words according to Blacks Law Dictionary: "Let a purchaser beware, who ought not to be ignorant that he is purchasing the rights of another."

Is the landlord bound to pursue the statutory remedy as provided to enforce his lien? No, the lien is much broader. *Henry* v. *Davis,* 60 Miss. 212; *Fitzgerald* v. *Fowlkes,* 60 Miss. 270; *Cohn* v. *Smith,* 64 Miss. 816; *Newman* v. *Bank,* 66 Miss. 323, 5 So. 753.

CHALMERS, J., in rendering a dissenting opinion in the case of *Wooten* v. *Gwin,* 56 Miss. —, says, "It may be ascertained as a general proposition, that whenever a clear legal right has been violated, and damages sustained by

the wrongful act of another, and the peculiar circumstances of the case preclude the bringing of any other form of action, an action on the case will always lie."

Counsel for appellee thinks the court ruled correctly in overruling appellant's motion asking for a peremptory instruction on pages 29-32 and 34 of said transcript, as amendments to pleadings may be made at any time before verdict rendered, so as to bring the merits of the controversy between the parties fairly to trial. See Mississippi Code 1906, section 775 and 776.

Counsel for appellee thinks that the law involved in this cause is fully set forth in Charge No. I, Tr., page —, presented by counsel for appellee to the court and given by the court to the jury; and that their verdict was a just and righteous one. Counsel for appellee can see little merit in either one of the three errors assigned by counsel for appellant; however, he has endeavored to answer each and every one fully and completely. Counsel for appellee confidently ask that this case be affirmed and that judgment be rendered by this court for appellee, J. E. Thomas, against the appellant, F. P. Phillips, for the full amount sued for thirty-three dollars and ninety-three cents with legal interest from the time same was due appellee by the appellant, and all court cost incurred.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant for the value of cotton purchased by the appellant from a tenant of the appellee. It appears that one M. L. White was a tenant of the appellee for the year 1920, and had been since 1918, working on what is known as the share-crop system. The appellee furnished to White during the year a small amount of merchandise and several items of cash, amounting altogether to two hundred and eighty-one dollars, on which there was a credit from cotton sold of forty-two dollars. The appellant bought from White cotton of the value of eighty-nine dollars. The appellee made demand upon the

appellant for said sum, being the value of the cotton purchased by the appellant from the tenant. The appellant consulted an attorney and declined to pay the amount, defending on the ground that he was a purchaser for value without notice, and that the course of dealing between the appellee and the tenant White constituted White the agent of the appellee to sell the cotton. The appellee, who was plaintiff, testified on this subject as follows:

"Q. I believe you stated that you knew when he brought the first bale down here? A. Yes, sir; about the time.

"Q. Do you know when he brought the second bale? A. Yes, sir; somewhere in the neighborhood of the time.

"Q. And you knew that he was hauling it here? A. Yes, sir.

"Q. Do you know who he sold it to? A. I found out who he sold it to.

"Q. Did you know who he was going to sell it to? A. No, sir.

"Q. You didn't go with him to sell it? A. No, sir.

"Q. Didn't you usually try to go with him and help him to get the best prices he could? A. No, sir; he usually sold his own cotton.

"Q. You permitted him to sell it himself, then? A. Yes, sir.

"Q. You thought it was his cotton, and he had a right to sell it? A. No, sir; I knew it wasn't his cotton; part of it was mine—all of it wasn't his.

"Q. You thought he would bring you the money back, or your part of it, and pay it to you, did you? A. Yes, sir; he usually did.

"Q. He had done that in 1918? A. Yes, sir.

"Q. And he had also done it in 1919? A. Yes, sir.

"Q. And he did it in 1920? A. Yes, sir; he sold the cotton in 1920.

"Q. You knew each time when he hauled the cotton off, didn't you? A. Yes sir.

"Q. And you knew that he was coming here to gin it, didn't you? A. Yes, sir.

"Q. And you knew that he was coming here to sell it?
A. Yes, sir.

"Q. You knew that he was coming here to gin it, and
knew that he was coming here to sell it? A. Yes, sir."

The brother of the tenant, White, also testified and
corroborated the testimony of the plaintiff as above set
out.

At the conclusion of the plaintiff's testimony· there was
a motion to exclude the evidence and direct a verdict for
the defendant, which motion was overruled, and the case
went to the jury, resulting in a verdict in favor of the
plaintiff, upon which judgment was entered, and from
which this appeal was prosecuted.

Appellant relies upon the case of *Seavey* v. *Godbold*, 99
Miss. 113, 54 So. 838. The principle announced in that
case, applied to the facts of this case, constitute the tenant
the agent of the landlord for the purpose of making sale.
The facts are somewhat different, but it is clear from the
plaintiff's own testimony that he trusted the tenant to
sell the cotton for him, and to move it from the premises
at his will. It so happened in the particular instance that
the tenant did not faithfully execute his trust in return-
ing the proceeds of sale to the landlord, but seems to have
disappeared from the community with the proceeds, leav-
ing either the landlord or the buyer to suffer the loss.
Under the facts of this case the loss must fall upon the
landlord.

Reversed, and judgment here for appellant.

*Reversed and rendered.*