McGee *et al. v.* Carver.*

(Division A.   Jan. 18, 1926.)

[106 So. 760.   No. 25330.]

Warehousemen.   *Bona-fide purchaser of warehouse receipts held to acquire stored cotton free from landlord's lien.*

> If a landlord permits his tenant or sharecropper to store cotton raised on the leased premises, and on which the landlord has a lien for rent in a warehouse and receive negotiable receipts therefor running to the order of the tenant, a purchaser of the receipts indorsed in blank by the tenant for value, without notice of the landlord's lien on the cotton, acquires the cotton free from the lien.

*Corpus Juris-Cyc. References;   Warehousemen, 40 Cyc., p. 425, n. 18.

Appeal from chancery court of Bolivar county, second district.

Hon. C. L. Lomax, Chancellor.

Controversy between B. O. McGee and others, co-partners doing business under the firm name of McGee, Dean & Co., and Carl Carver, instituted on a bill of interpleader filed by the Bolivar Compress Company. From a decree awarding to each party to the controversy a one-half interest in certain cotton, B. O. McGee and others appeal.   Reversed, and decree rendered for appellants.

*Shands, Elmore & Causey,* for appellants.

The appellants contend that they purchased from Mr. Somerville not only Norwood's half interest in the bale but the entire bale; that they are purchasers in good faith for value; and that the appellee is estopped from claiming any part of the cotton.   The receipt in question is a negotiable receipt.

It will be observed that the receipt contains a form in which a statement of the names of all parties who own an interest in the cotton or who hold encumbrances against it may be inserted, so that purchasers may be put on notice of the interest owned or encumbrances held by such parties. By referring to section 5, chapter 218, Laws of 1920, we find a negotiable warehouse receipt is defined as follows: "A receipt in which it is stated that the goods received will be delivered to the bearer, or to the order of any persons named in the receipt, is a negotiable receipt." Section 37 defines how receipts may be negotiated. See, also sections 40, 41, 47.

It is conceded that the appellee and Mr. Norwood each owned a one-half undivided interest in the cotton produced during the year 1923, which includes this bale; that Norwood hauled this cotton off of the plantation to the gin. Norwood had it ginned; he had the cotton hauled to the compress and placed there in his name; that is, as if he owned the cotton. He had the receipts issued to himself in his name, and he procured the receipts from the gin office at the gin. He held the receipts until a sale was made and negotiated for such sales, all of which was done with the knowledge, consent and permission of the appellee.

This is not a case where Norwood stole the cotton, deposited it in the warehouse, and had the receipt issued to himself. But it is a case where both owners of the cotton consented to the warehousing and consented to one of the owners procuring a negotiable receipt which showed that the possessor of the receipt was the owner. It is a case where the appellee, a co-owner, departed for the "hills" and permitted the apparent owner of the cotton to use the receipt as he saw fit. So we are compelled to view this case from the standpoint of a purchaser in good faith for value. If from the receipt itself and all that it purports Somerville was able to convey the title to an innocent purchaser, then such purchaser is protected under this act. The very purpose for

enacting the above statutes was to protect a *bona-fide* purchaser of cotton.

The proof shows that Somerville had the ability to convey the title to the cotton. The receipt was delivered to him for that purpose. The delivery of the receipt to Mr. Somerville by Norwood was satisfied and approved by appellee as soon as he returned from the "hills." The testimony shows that Somerville had authority to sell the cotton and do whatever was necessary to make the sale; that is, to endorse the receipt; because appellee knew that the receipt was not issued to him but to Norwood.

What title is a holder of a negotiable receipt able to convey to a purchaser in good faith for value? We answer not a title which is dependent upon secret agreements between the holder of a receipt and some other person who secretly holds a lien or a title to a part of the goods, especially where such agreements have reference to the price to be obtained at a sale, and the distribution of such sum after the sale. And, moreover, such secret agreements should not defeat the title of an innocent purchaser for value when we find that the complaining party was satisfied with the sale and demanded the very price for which the goods were sold, and upon a failure to obtain such settlement, then manifests a dissatisfaction. We must look to the instrument to determine the title, and such title as shown by the instrument in this record shows a full right in Mr. Norwood to transfer the instrument and the title to the cotton. The appellants are purchasers in good faith until the appellees show that the receipt in some instance was irregular or incomplete. We direct the attention of the court to *Commercial Nat'l Bank* v. *Canal-Louisiana Bank & Trust Co.*, 239 U. S. 520, 60 L. Ed. 417, Ann. Cas. 1917 E. 25; and the *Arbuthnot case* (La.), 72 So. 251. The question presented in this case has not been previously presented to this court for decision, but see *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co.*, 133 Miss. 91, 97 So. 526; also *Campbell* v. *Farmers' Bank of Boyle*, 127

Miss. 668, 90 So. 436. In *Phillips* v. *Thomas*, 128 Miss. 729, 91 So. 420, the rights of an innocent purchaser of the actual bale of cotton were involved. See, also, *Seavey* v. *Godbold*, 99 Miss. 113, 54 So. 838; *Judd* v. *Cotton Co.*, 133 Miss. 866, 98 So. 243.

The Phillips, Godbold and Judd cases are cases where the landlord permitted the tenant to retain possession of the landlord's interest in the cotton, and knowing that the tenant was selling the cotton, made no effort to prevent the sales. In those cases the landlord permitted the tenant by his conduct and acquiescence to dispose of the actual cotton, a species of property which has no negotiable attribute. The case at bar is one where the plea of an innocent purchaser should most certainly obtain the ear of the court, because the landlord has permitted his tenant to gin the cotton; place it in a warehouse; obtain negotiable receipts; permitted the negotiable receipts to be issued as if the entire cotton was owned by his tenant; permitted a sale of the cotton; and permitted the tenant to make a division of the proceeds in which transaction the proof shows that the tenant was acting for the landlord; and in this instance the landlord knew that the tenant had negotiated the receipt to Mr. Somerville; and demanded of Somerville his one-half of the proceeds after the sale.

*Simmons & Jackson,* for appellees.

The relation of landlord and tenant fully existed between Norwood and Carver; and the landlord had a lien upon the whole bale of cotton for his one-half interest, which lien was paramount and superior to all others; and this lien can be enforced as to innocent purchasers without notice and for value. *Robinson Co.* v. *Weathersby,* 101 Miss. 724, 57 So. 983; *Campbell* v. *Farmers Bank of Boyle,* 127 Miss. 668, 90 So. 436. It is a familiar rule laid down in *Commercial Nat'l Bank* v. *La. Bank & Trust Co.*, Ann. Cas. 1917 E. 25, cited by appellant, that one who has no title to chattels cannot transfer title un-

less he has the owner's authority or the owner is estopped; and the general rule is there stated in *Commercial Nat'l Bank, supra*, and all other cases, so far as we have been able to find in states adopting the Uniform Warehouse Receipts Act, as interpreting section 41 of said act, which provides that a person to whom a negotiable warehouse receipt is duly negotiated acquires thereby "such title to the goods as the person negotiating the receipt to him had ability to convey to a purchaser in good faith for value."

It is strenuously argued by counsel that because Carver permitted his tenant, Norwood to gin and store the cotton in the compress, and take the receipts in his name, that these acts on the part of the landlord estopped him from asserting his lien, but it will be observed from the record that the said Norwood not only had no authority to sell any of the other cotton without the consent of Carver and the said Carver fixing the price, but as to the specific bale in question, no one was ever authorized to make the sale, because Norwood had never obtained the consent of the landlord to dispose of this bale; the price had never been fixed or agreed upon, consequently Norwood was without authority and power to make the sale, as will be seen from the record.

The receipt was not negotiated by Norwood to Somerville, but only transferred, and whatever agreement Somerville had with Norwood and Carver were binding upon the appellants, as the act of Somerville in undertaking to negotiate unlawfully the said cotton receipt did not convey any title to the good other than what Somerville had himself, as specified in section 41 of the Uniform Warehouse Act. Norwood never authorized Somerville to sell this bale of cotton; indeed, he was without authority to do so.

We contend that appellants are not *bona-fide* purchasers, for the reason that the mere fact that the receipt was made out in the name of Norwood and with the further fact that there was a deed of trust on record to the Greenville Motor Co., as heretofore referred to in the

brief of appellants, and which was sufficient to place the appellants upon notice of the infirmities of the receipt, then with this notice served upon them and knowing that the bale of cotton was stored by Norwood, it would have been an easy matter for them to have investigated and learned from Norwood that he claimed only one-half interest in the bale of cotton.

Boiled down, therefore, the only thing that an estoppel in this case could be based upon is the mere fact that Carver permitted the compress receipt to be issued in the name of Norwood, and if this alone could be sufficient in any case, it could not be sufficient under the facts in this case, all parties had actual notice. *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co.*, 103 Miss. 916, 97 So. 526. Not only did Somerville have actual notice, but all the world had constructive notice of the landlord's lien of the appellee upon the bale of cotton. The case above quoted holds clearly that a mortgagee of cotton where the mortgage is filed for record, has a right over the cotton of which purchasers are bound to take notice, and a purchaser of such cotton cannot be said to be an innocent purchaser for value while such a mortgage is outstanding and of record. Our Landlord's Lien Statute, section 2330, Hemingway's Code (section 2832, Code of 1906) provides that the lien therein provided for shall be paramount to all other liens.

*Commercial Bank* v. *Canal Bank*, Ann. Cases 1917 F. 25, has no application to the facts of the case at bar, as was held in the *Marine Bank* v. *Greenville Savings Bank & Trust Co., supra.* Counsel also cites *Seavey* v. *Godbold*, 99 Miss. 729; *Phillips* v. *Thomas*, 128 Miss. 729; and *Judd* v. *Cotton Co.*, 133 Miss. 866, as authority for their position in this case. There is a decided difference in the facts of those cases, and the case at bar. In those cases the landlords were undertaking to assert their liens when the court held they were estopped as the purchasers for value, because of their course of dealings with their tenants; whereas in the case at bar, no agency

in fact existed at the time of the sale in question, as all the parties well know.

SMITH, C. J., delivered the opinion of the court.

The Bolivar Compress Company, which conducts a public warehouse for the storing of cotton, filed a bill of interpleader in the court below alleging that it had in its possession a bale of cotton for which it had issued a negotiable receipt, and which was claimed by several named persons, and prayed that they be summoned to appear and propound their claims to the cotton, which would .thereafter be dealt with by the compress company in accordance with any decree the court might render relative thereto. Pursuant to the summons served on them, the appellants, who are copartners doing business under the firm name of McGee, Dean & Co., and the appellee appeared and propounded their claims to the cotton. An issue was made up and tried between them, and a decree was rendered, awarding to each of them a one-half interest in the cotton, from which decree McGee, Dean & Co., brought the case to this court.

McGee, Dean & Co. purchased the cotton from R. N. Somerville, who was in possession of and delivered to them the negotiable receipt therefor, on the back of which Norwood's name had been written as an indorsement in blank. The cotton was produced in 1923, by Q. L. Norwood, on land belonging to Carl Carver, under an agreement by him with Carver that the crops raised on the land worked by Norwood should be divided equally between himself and Carver. In addition to the cotton here in question, Norwood produced several other bales of cotton under this agreement with Carver, each of which was stored by Norwood, when gathered, with the Bolivar Compress Company, and a negotiable receipt was issued therefor to him with the knowledge and consent of Carver. Each of these bales of cotton was sold by Norwood, and the proceeds thereof were divided by him with

Carver. Some of the sales were made by Norwood without and others by previous agreement with Carver.

Norwood executed a deed of trust to a man by the name of England on his interest in the crop to be produced by him on Carver's land, to secure a promissory note executed by him to England, which note and deed of trust afterwards became the property of the Bank of Grenada. The sales made by Norwood of the cotton produced by him on Carver's land were made without the knowledge or consent of the Bank of Grenada which, on learning thereof, instituted legal proceedings for the enforcement of its deed of trust thereon. A criminal proceeding was also instituted against Norwood for having sold the cotton subject to the lien and the deed of trust without informing the persons to whom he sold it thereof. While under arrest on this charge he, together with his counsel, had a conference with Somerville, an attorney at law who represented the Bank of Grenada, in which it was agreed that all of the legal proceedings, both civil and criminal, against Norwood growing out of the sale by him of the cotton, should be dismissed. Receipt for the bale of cotton here in question was turned over to Somerville, with authority to indorse Norwood's name on the back thereof, to sell the cotton, indorse Norwood's name on the back of the warehouse receipt, and transfer it to the purchaser.

According to Somerville, the money realized by him from the sale of the cotton was to be applied by him to the payment of Norwood's note to England then owned by the Bank of Grenada. According to the evidence of Norwood and his attorney, Somerville was to hold the receipt and sell the cotton in conjunction with Carver, who was to receive one-half of the proceeds thereof, and the other one-half was to be applied by Somerville to Norwood's note to England.

Somerville admits that he knew of Carver's one-half interest in the cotton, but claims that Norwood promised to obtain a release from Carver thereto, and that Norwood afterwards told him that he had arranged the

matter with Carver, and that he (Somerville) could proceed to sell the cotton and apply the proceeds to the England note.

McGee, Dean & Co. purchased the cotton in good faith, without notice of Carver's claim to an interest therein. Norwood's name was written on the back of the warehouse receipt by Somerville, and, while the appellee denies that he was authorized so to do, it is manifest from the evidence that he was so authorized.

After the cotton was sold to McGee, Dean & Co. Carver instituted a proceeding against the cotton under the landlord and tenant chapter of the Code, and the sheriff attempted thereunder to sell the cotton without having taken the cotton into his possession, at which sale Carver, having made the best bid therefor was declared by the sheriff to be the purchaser thereof. No cross-appeal was taken by Carver from the decree awarding the owner a half interest in the cotton, and, as we understand the brief of his counsel, he does not and could not successfully contend that he acquired any title to the cotton by virtue of the attempted sale thereof under the landlord and tenant proceeding.

The receipt for the cotton issued to Norwood recites that, "upon the return of this receipt properly indorsed . . . the said one bale of cotton will be delivered to the above named depositor or his order," and under section 5, chapter 218, Laws of 1920, was negotiable. Other pertinent provisions of this statute are as follows:

Section 37:

"A negotiable receipt may be negotiated by delivery— . . .

"(b) Where, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of a specified person, and such person or a subsequent indorsee of the receipt has indorsed it in blank or to bearer."

Section 40:

"A negotiable receipt may be negotiated— . . .

"(b)    By any person to whom the possession or custody of the receipt has been intrusted by the owner, if, by the terms of the receipt, the warehouseman undertakes to deliver the goods to the order of the person to whom the possession or custody of the receipt has been intrusted, or if at any time of such intrusting the receipt is in such form that it may be negotiated by delivery."

Section 41:

"A person to whom a negotiable receipt has been duly negotiated acquires thereby—

"(a)    Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and

"(b)    The direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

Section 47:

"The validity of the negotiation of a receipt is not impaired by the fact that such negotiation was a breach of duty on the part of the person making the negotiation, . . . if the person to whom the receipt was negotiated, paid or a person to whom the receipt was subsequently negotiated, paid value therefor, without notice of the breach of duty," etc.

When Somerville indorsed Norwood's name on the back of the warehouse receipt, as he was authorized to do, it became negotiable by delivery under section 37 of this statute.    And, even if it be true, as Carver claims, but which Somerville denies, that, in negotiating the receipt, he violated a promise not to negotiate it without Carver's consent, nevertheless McGee, Dean & Co., having purchased the cotton and received the receipt therefor in good faith, without notice of Carver's interest

therein, acquired thereby, under section 41 of the statute, the full and unrestricted ownership of the cotton.

The appellee's main contention is that a landlord's statutory lien on crops grown on the leased premises has not been superseded by the Uniform Warehouse Receipts Act, and that, notwithstanding section 41 thereof, his lien on the cotton here in question may be enforced, although the appellants purchased the warehouse receipt therefor without notice of his lien. The two cases relied on by the appellee are *Campbell* v. *Farmers' Bank of Boyle,* 127 Miss. 668, 90 So. 436, and *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co.,* 133 Miss. 91, 97 So. 526.

We are not here called on to determine whether the appellee could enforce his landlord's lien on the cotton, had it been deposited in the warehouse and a negotiable receipt therefor been issued to Norwood without his (the appellee's) consent; for, as hereinbefore set forth, he permitted Norwood to store the cotton in the warehouse and receive a negotiable receipt therefor, thereby permitting him to be clothed with the apparent ownership of the cotton through the possession of the warehouse receipt. Having trusted Norwood with the *indicia* of ownership, he is precluded by the statute from asserting a lien thereon against one who purchased the warehouse receipt in good faith for value. *Commercial Nat. Bank* v. *Canal Bank,* 239 U. S. 520, 36 S. Ct. 194, 60 L. Ed. 417, Ann. Cas. 1917E, 25. This case was referred to in *Marine Bank & Trust Co.* v. *Greenville Savings Bank & Trust Co., supra,* and it was there expressly pointed out that the cotton there involved had been stored in the warehouse without the consent of the holder of the lien. The views herein expressed are strengthened when the cases of *Phillips* v. *Thomas,* 128 Miss. 729, 91 So. 420; *Judd* v. *Delta Grocery & Cotton Co.,* 133 Miss. 866, 98 So. 243, and *Tonnar* v. *Washington & Issaquena Bank* (Miss.), 105 So. 750, are taken into consideration.

The decree of the court below will be reversed, and a decree awarding the cotton to the appellant will be here rendered.

*Reversed, and decree here.*