CRUTCHER v. COMMERCIAL BANK.*

(Division B.   Feb. 28, 1927.)

[111 So. 569.   No. 26237.]

1. LANDLORD AND TENANT. *Assignee of rent note by reason of custom held to have waived landlord's lien in favor of purchaser for value without notice.*

Bank, having taken assignment of rent notes, *held* by virtue of its course of dealing with its customers on whose crops it held liens, to have waived its landlord's lien on crop in favor of bona fide purchaser for value without notice of lien, because of custom of permitting customers on whose crops it held liens to sell crops as harvested and apply proceeds on indebtedness.

2. LANDLORD AND TENANT. *Holder of deed of trust, receiving proceeds of sale of cotton by tenant, held not to have converted cotton as against assignee of rent note.*

Holder of deed of trust on crops, taking no part in sale of cotton by tenant, and simply holding negotiable warehouse receipts as security for indebtedness until sale of cotton, *held* not to have converted cotton as against assignee of rent note of which he had no notice.

*Corpus Juris-Cyc. References: Landlord and Tenant, 36CJ, p. 515, n. 57; p. 523, n. 44, 48.

APPEAL from circuit court of Coahoma county, Second district.

HON. W. A. ALCORN, JR., Judge.

Action by the Commercial Bank against R. H. Crutcher. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Cutrer & Smith,* for appellant.

I. It is undisputed that the tenant, Bologna, sold the cotton through Herrin Bros Cotton Company. It is undisputed that R. H. Crutcher the defendant, neither purchased nor sold the cotton. It is true that the Herrin Bros. Cotton Company, at the request of Bologna paid part of the proceeds from the cotton to Crutcher, and that Crutcher applied the proceeds on the account of Bologna. Under these undisputed facts the action of conversion against Crutcher could not lie, and the directed verdict granted on behalf of the plaintiff was improper and the court should have directed a verdict in favor of defendant, Crutcher. This question is conclusively settled by *Jones et al.* v. *Stevens et al.* (Miss.), 12 So. 446.

II.   It is likewise undisputed in this case, as shown by the stipulation of counsel and by the testimony of Crutcher, that he did not know that the landlord's lien had been assigned to the plaintiff bank.   Likewise, it is undisputed that before advancing the money to the tenant, Bologna, Crutcher secured a waiver of the landlord's lien from the landlord and, likewise, took a deed of trust from the tenant.   It was solely on the faith of the execution of these instruments that Crutcher advanced the money, and he rested in the security that he had a first lien on his crop for advances and at no time was he advised of the fact that the bank held the rent note, and the bank at all times concealed the fact of the ownership of the rent note from Crutcher, and permitted Crutcher without notice to advance the money to Bologna.   Under these facts *Dreyfus* v. *Gage & Co.* (Miss.), 36 So. 248, controls.

III.   No demand was ever made upon Crutcher for the cotton in question, or to pay the value thereof, and was refused.   This is essential and necessary before a suit in trover and conversion can be filed.   *Witherspoon* v. *Beelett,* 47 Miss. 570.

IV.   However, even if we were to concede, which the record belies that Crutcher actually and in fact purchased the cotton in controversy from Bologna, yet under the undisputed facts in the record the bank is estopped to deny Crutcher's title.   *McGee-Dean & Co.* v. *Carver,* — Miss. —, 106 So. 760; *Tonner* v. *Washington & Issquena Bank,* — Miss. —, 105 So. 750.

*Maynard, FitzGerald & Venable,* for appellee.

I.   It has long been the law in this state that the landlord or his assignee has the lien to secure the rent and supplies for the current year on all agricultural products raised on the leased premises, and may assert it against

the products or the purchaser with or without notice of such lien. *Ball* v. *Sledge,* 82 Miss. 749; *Peets Norman* v. *Baker,* 95 Miss. 576; *Eason* v. *Johnson,* 69 Miss. 371.

The proof here is undisputed that Bologna placed the cotton in the warehouse, and endorsed the receipts over to Crutcher, which in legal effect was the delivery of the cotton to him. A landlord can enforce a lien for rent and supplies against the crop of a tenant even as against one who furnishes supplies to the tenant to his knowledge, and where the furnisher relies on the security of the crop to the knowledge of the landlord, the possession of the tenant being notice of the rights of the landlord. *Robinson* v. *Weathersby,* 101 Miss. 724.

It has been held also that the uniform warehouse receipt act does not repeal the doctrine of notice under the registry laws. *Bank & Trust Co.* v. *Bank & Trust Co.,* 133 Miss. 91. It has also been decided that the uniform warehouse act, with its provisions for negotiable warehouse receipts, does not repeal the statutes giving the landlord a paramount lien on the agricultural products raised on the leased premises, as against an innocent purchaser. *Campbell* v. *Farmers Bank,* 127 Miss. 668.

By a uniform line of decisions, as illustrative of which are *Seavey* v. *Godbold,* 99 Miss. 113, and *Judd* v. *Delta Grocery & Cotton Co.,* 133 Miss. 866, it has been held that where the landlord permits his tenant to act as his agent for the sale of the cotton or under the warehouse act, where he gives his consent, by a course of conduct or expressly, for the tenant to place the cotton in the warehouse and agrees to take a warehouse receipt in his own name, that having given the tenant the *indicia* of ownership, he is estopped as against the innocent purchaser of the receipt to assert his lien on the agricultural product.

The decisive question in this case then is, Did the bank ever give Bologna permission to place the cotton in the warehouse and take receipts? The uncontradicted testimony of the record is that the bank knew nothing

about Bologna's dealing with the cotton or with Crutcher until after the cotton had been gathered, placed in the warehouse, sold and Crutcher had received the money.

We submit that the proof does not show any permission by consent or course of conduct, for Bologna to put the cotton in the warehouse or deal with it. Neither is there any sort of contention that the bank did anything which would estop it from the assertion of the landlord's lien evidenced by the note.

Argued orally by *E. W. Smith* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellee, Commercial Bank, brought this action in the second district of the circuit court of Coahoma county against appellant, R. H. Crutcher, for the sum of one thousand four hundred thirty-eight dollars and sixty-four cents, the value of eleven bales of cotton alleged to have been converted by appellant to his own use, on which cotton appellee had a landlord's lien. There was a verdict and judgment for the amount sued for, with interest, from which judgment appellant prosecutes this appeal.

Certain facts were agreed upon between the parties, in writing, and made a part of the record. Additional testimony was introduced. There was no real conflict in the evidence as to the controlling facts of the case. Therefore either appellant or appellee was entitled to a directed verdict.

On the 21st of November, 1923, J. H. Smith and his wife, Olive Clark Smith, were indebted to appellee in the sum of five thousand one hundred sixty-nine dollars and seven cents, evidenced by their promissory note of that date. The Smiths had rented to one Sam Bologna for the year 1924, one hundred acres of their farm land to be cultivated in cotton and other crops, for which Bologna agreed to pay the Smiths two thousand one hundred

dollars on the 1st of November, 1924. The Smiths, as additional security for their indebtedness to appellee, transferred to appellee the Bologna rent note. By virtue of such transfer, appellee held as part security for the indebtedness due it by the Smiths the Bologna rent note and the landlord's lien, passing with its transfer on the agricultural products produced by Bologna on the leased premises for the year 1924. Appellee's indebtedness against the Smiths was further secured by deed of trust on their farm land and also collateral notes in addition to the Bologna note. On February 24, 1924, and on June 3, 1924, the Smiths executed waivers of their landlord's lien on the crops of Bologna to enable the latter to purchase supplies with which to farm the land he had rented from them. In the waiver executed on February 24, 1924, the Smiths waived their landlord's lien against the crops of Bologna to the extent of one thousand two hundred dollars, and on June 3, 1924, they waived it for an additional amount. By virtue of these waivers by the Smiths, appellant agreed to furnish Bologna the necessary supplies with which to enable the latter to farm the land he had rented from the Smiths. To that end, on the 29th day of February, 1924, Bologna executed his note and a deed of trust on his crops to secure the same to appellant for an amount sufficient to cover the supplies to be furnished. At the time of the execution of the landlord's waiver by the Smiths, appellant had no notice that the Smiths had transferred Bologna's rent note to appellee to secure their indebtedness to the latter, nor did appellee have any notice, until the cotton was sold in the fall of 1924, that the landlord's waiver had been executed, and that upon the faith of its execution appellant had made advances to Bologna to enable him to farm the land.

In the fall of 1924 Bologna took eleven bales of the cotton produced on the leased premises and deposited them in a warehouse, receiving from the warehouse company negotiable warehouse receipts therefor, which re-

ceipts he indorsed in blank and turned over to appellant as security for his indebtedness to appellant. Later Bologna sold the eleven bales of cotton to Herrin Bros. Cotton Company. When the sale was made Bologna obtained the negotiable warehouse receipts from the appellant and turned them over to the purchasers of the cotton, who paid him therefor. Bologna then paid the proceeds of the sale of the cotton over to appellant on his indebtedness to appellant. It was stipulated in the agreed statement of facts that, at no time prior to the sale of the cotton by Bologna and the turning over of the proceeds thereof to appellant, the latter had any actual notice that Bologna's rent note had been transferred by the Smiths to appellee. Appellant took no part in the sale of the cotton. The entire transaction of the sale and the purchase of the cotton was between Bologna and Herrin Bros. Cotton Company. Appellant simply held the negotiable warehouse receipts for the cotton as security for his indebtedness against Bologna until the cotton should be sold by Bologna and the proceeds turned over to appellant.

Appellee contends and the court below so held that, by virtue of being the holder by transfer from the Smiths of the Bologna rent note, it had a landlord's lien on the eleven bales of cotton, and that such lien was paramount to the lien of appellant, and that appellant was liable to appellee for the value of the eleven bales of cotton because appellant had converted the cotton to his own use; while appellant's contention is that appellee, by its course of conduct with reference to the sale of the cotton, waived its landlord's lien thereon, and that, even though it be true that appellee did not waive its landlord's lien, appellant was not liable for the value of the cotton because the evidence showed without conflict that he did not convert the cotton to his own use.

Mr. Lamkin, president of appellee bank, testified, in substance, that he did not give Bologna or any one else permission to dispose of the negotiable warehouse re-

ceipts for the cotton by selling the cotton or otherwise; that he did not know who was furnishing Bologna supplies with which to carry on his farming operations, but knew that he was a tenant of the Smiths; that the crops produced by the Smiths on that part of their. plantation not leased to Bologna, covered by appellee's mortgage, were from time to time sold by the Smiths and the proceeds of the sales brought to appellee and by the latter applied to their indebtedness to appellee; that the course of dealing by appellee with its customers on whose crops appellee had liens was to permit its customers to sell their crops, as harvested, and bring the proceeds of the sales to appellee to apply on their indebtedness; that that was the usual practice; that appellee never objected to any of its customers, on whose crops it had liens, either selling the cotton and turning the proceeds over to appellee to apply on their indebtedness, or depositing the cotton in a warehouse, receiving therefor negotiable warehouse receipts and turning the receipts over to appellee, unless there was some reason to believe that a customer was dishonest and could not be trusted; that whether a customer either sold the cotton and turned the proceeds over to appellee, or deposited the cotton in a warehouse and turned the negotiable warehouse receipts over to appellee, there was no objection by appellee; that that was the general course of dealing between appellee and its customers on whose crops appellee had liens. In answer to one question, Mr. Lamkin used this language:

"When the cotton is sold immediately on going to market, they (meaning the bank's customers) usually sell it and give us the proceeds. If it is not sold immediately, they bring the receipts to the bank and put them in the bank until the sale is made of the cotton."

With reference to the particular rent note held by appellee against Bologna, Mr. Lamkin testified as follows:

"Q. And it was your idea, I take it, that he should sell the cotton, and remit the proceeds to you? A. Yes, sir.

"Q. And if he hadn't done that, was it your idea that he would take the cotton to the workhouse, and bring the receipts to you? Either one of those transactions would have been satisfactory to you, would it not? A. Yes, sir.

"Q. That is what you expected to be done, in this case, with reference to this transaction with Captain Smith and Sam Bologna? A. Yes, sir."

Lamkin testified further that this general custom was observed except where he thought a customer of appellee was dishonest. With reference to the alleged conversion of the cotton by appellant, the evidence showed without conflict that appellant had nothing to do with the selling of the cotton; that he simply held the negotiable warehouse receipts therefor as security for his indebtedness against Bologna; that Bologna sold the cotton to Herrin Bros. Cotton Company, and got the warehouse receipts from appellant, delivered them to the purchaser and turned the proceeds of the sale over to appellant to pay the indebtedness he was due the latter for supplies; and that up to that time appellant had no actual notice that Bologna's rent note was held by appellee, or that he had not paid his rent note.

We are of opinion that, by virtue of the course of dealing between appellee and its customers on whose crops appellee held liens, appellee waived its landlord's lien on Bologna's crop in favor of a *Bona-fide* purchaser of the cotton for value, without notice of such lien. *Quiver Gin Co.* v. *Looney,* 111 So. 107 (No. 26067, decided by this court on January 3, 1927); *Patterson* v. *Jones Mercantile Co.,* 117 Miss. 355, 78 So. 294; *McGee* v. *Carver,* 141 Miss. 463, 106 So. 760; *Seavey* v. *Godbold,* 99 Miss. 113, 54 So. 838; *Judd* v. *Delta Grocery Co.,* 133 Miss. 866, 98 So. 243. It was held in *McGee* v. *Carver, supra,* that where a landlord permitted his tenant to

store cotton, raised on the leased premises, on which he had a landlord's lien for rent, in a warehouse, and receive negotiable warehouse receipts therefor running to the order of the tenant, a purchaser for value without notice of such receipts, indorsed in blank by the tenant, acquired the cotton free from the lien. That is exactly what was done in this case, according to the testimony of Mr. Lamkin, president of appellee bank.

The evidence falls short of tending to establish that appellant had any hand in the conversion of the cotton by Bologna. Appellant did not buy the cotton from Bologna, nor did he in any manner take part in the sale of the cotton by Bologna to Herrin Bros. Cotton Company. Appellant simply held the negotiable warehouse receipts, indorsed in blank, as security for his indebtedness against Bologna until the cotton should be sold by Bologna. The cotton was sold by Bologna, and not by appellant. It is true, appellant acquiesced in the sale of the cotton by permitting him to deposit the cotton in a warehouse and receive therefor negotiable warehouse receipts, but that cannot be said to have been an act of conversion. The agreed facts show that at the time the cotton was sold to Herrin Bros. Cotton Company appellant did not know that Bologna had not paid his rent note, and that the rent note was held by appellee. We are unable to see why appellant stood in a different attitude toward the cotton than Herrin Bros. Cotton Company. He was a creditor of Bologna and received in payment of his indebtedness from Bologna the proceeds of the sale of the cotton. It is true that, as between appellee and Bologna, it was the first duty of Bologna to pay his rent note with the proceeds of the sale of the cotton, for that was a first lien on the cotton. Instead of doing that, he paid one of his creditors, the appellant, with the proceeds of the cotton. It was held, in *Jones* v. *Stevens* (Miss.), 12 So. 446 (not officially reported), that one who merely receives on an account against a tenant money realized by the tenant from the

sale of agricultural products, on which there is a land-
lord's lien for rent, is not liable to the landlord for such
rent on the ground of conversion.

It follows from these views that the court ought to
have granted appellant's request for a directed verdict
in his favor.

*Reversed and judgment here.*