## WILLIAMS *v.* DELTA GROCERY & COTTON Co.

(Division A.   March 2, 1931.)

[132 So. 732.   No. 29005.]

Maynard, FitzGerald & Venable, of Clarksdale, and W. D. Womack, of Belzoni, for appellant.

Roberson & Cook, of Clarksdale, for appellee.

Argued orally by **W. D. Womack**, for appellant, and by **Sam C. Cook**, for appellee.

**Cook, J.,** delivered the opinion of the court.

During the years 1926, 1927, and 1928, the appellant, G. C. Williams, was employed as an assistant manager or overseer of the plantation of J. K. Millen, in Sunflower county, Mississippi. The Delta Grocery & Cotton Company is a corporation engaged in the wholesale grocery and hardware business, and in the plantation supply and cotton factor business. In April, 1930 the appellant instituted this suit against the said Delta Grocery & Cotton Company for the balance due him as salary as such plantation manager, on account of the alleged tortious conversion of cotton grown on the plantation of the said J. K. Millen, and upon which he claimed a laborer's lien for work performed in its production. Upon the trial of the cause, there was a verdict and judgment in favor of the defendant, Delta Grocery and Cotton Company, from which this appeal was prosecuted.

The declaration filed by the appellant alleged, among other things, the following:

"Plaintiff avers that under the terms of his contract with the said J. K. Millen, it was only his duty, as plantation manager, to direct the labor and tenants upon said

plantation and that he had no authority in the management of the business affairs and exercised no authority, or control, over the crop after it had been ginned and baled, and that, as aforesaid, the said J. K. Millen, living upon said plantation, took charge of the cotton when the same was ginned and baled and shipped the same to the defendant without the consent, or authority, of the plaintiff in any shape or form whatsoever and that the plaintiff in no way consented to, or authorized, or acquiesced, in the shipment and the sale of cotton raised upon the said plantation for the year 1928, either expressly, or impliedly. . . .

"That the plaintiff did not authorize or consent for J. K. Millen or The Delta Grocery & Cotton Company, defendant, to sell said cotton and in no way waived his lien thereon, either expressly, or impliedly.

"Plaintiff avers that because of the fact that the defendant, The Delta Grocery & Cotton Company, committed the tortious act of selling and disposing of the said cotton crop, as aforesaid, without the consent or authority of plaintiff, the said defendant is liable to the plaintiff for the wrongful conversion of said cotton, which was sold during the fall and winter of 1928 and has been shipped beyond the confines of the state of Mississippi.

"Plaintiff avers that in the early spring of 1929, after his salary became due and payable, he went to The Delta Grocery & Cotton Company and requested payment of the balance due him, which was refused at that time and at the same time plaintiff was led to believe, by one of the officials of the defendant, that the balance of his salary would be paid in the fall of 1929, which has not been done, as aforesaid."

To this declaration the appellee filed a general issue plea of not guilty and non assumpsit, and, at the conclusion of the testimony offered by the respective parties at the trial of the cause, both the appellant and appellee requested a peremptory instruction, which was refused,

and thereupon the cause was, under instructions granted by the court, submitted to the jury.

The proof shows that during the years 1926, 1927, and 1928, J. K. Millen owned and operated a plantation in Sunflower county, and that he obtained the money necessary to supply his plantation and operate the same from the appellee, by giving to it a deed of trust on all the cotton grown thereon, containing the stipulation that all the cotton should be shipped to the appellee, and it would have the right to sell and dispose of it; that during the years 1926 and 1927 all the cotton grown on this plantation was shipped to the appellee, and was sold and applied on the indebtedness of Millen to the appellee, but it was not sufficient to discharge the indebtedness, which was consequently increased each year. For the years 1926 and 1927, Millen did not pay in full the salary due the appellant for his services as assistant manager on the said plantation, and in the spring of 1928 there was an agreement between Millen and the appellant by which Millen promised to pay the appellant two hundred fifty dollars per month until his salary should be brought up to date, and during that year numerous drafts were drawn by Millen on the Delta Grocery & Cotton Company upon which was entered the notation "salary account;" these drafts being paid by the appellee, and the proceeds thereof applied by Millen first to the discharge of the salary due the appellant for the years 1926 and 1927, and the balance on the salary for the year 1928, leaving a balance due the appellant for 1928 of one thousand eight hundred sixty-nine dollars and seventy-one cents. The officers of the appellee company testified that they had no notice of the fact that the proceeds of these drafts, drawn for "salary account," were to be used in payment of salaries due for previous years, and there is no testimony to the contrary.

As to his duties on the plantation, and the method of handling the cotton grown thereon, the appellant testified

that his duties consisted chiefly in handling the labor in the actual cultivation and harvesting of the crop, and preparing it for market; that he had nothing to do with making the financial arrangements for operating the plantation, or with the disposition or sale of the cotton grown thereon; that Millen disposed of the crops of 1926 and 1927 with his knowledge, and without any sort of protest or objection on his part; that after Millen disposed of the cotton he expected him to pay his salary "when he could pay it;" that, after the cotton for these years was sold, Millen did not pay his salary, and they agreed that "he would pay me as long as he could;" that it was agreed between him and Millen that during the year 1928 Millen would pay him two hundred fifty dollars per month until his salary was brought up to date; that the cotton grown in 1928 was likewise disposed of by Millen with his knowledge, and without any sort of objection or protest on his part; and that it was perfectly agreeable to him for Millen to sell the cotton and pay him, because "I did not go there and work for a certain amount of cotton."

He further testified that, in March, 1928, he sought a settlement of his salary account with Millen, and secured from him a promissory note in regular form for the amount due, being one thousand eight hundred sixty-nine dollars and eighty-one cents, which was dated March 30, 1929, and payable on November 1st after date, with interest at the rate of 4 per cent per annum. He testified that this note was not taken in settlement of the account, but merely as a memorandum thereof evidencing the amount due. After this note was executed, however, the appellant tried to sell it to the appellee company, and, failing in that, he endeavored to secure its indorsement thereof.

The first contention of the appellant is that the defenses of payment and waiver or estoppel were not within the issues made by the plea of general issue filed by the ap-

pellant, and that consequently his motion made at the conclusion of the evidence, to exclude the evidence and direct a verdict for him, should have been sustained.

It is true that every defense not merely consisting of a denial of the allegations of the declaration must be pleaded specially, or notice thereof given under the general issue, "but it is also true that every defense which is founded on a denial of the allegations of the declaration may be made under the plea of the general issue." Saenger Amusement Co. v. Murray, 128 Miss. 782, 91 So. 459, 461. Evidence that would support a waiver as a defense to a right of recovery should be excluded when properly objected to, if such waiver is not specially pleaded, or notice thereof given under the general issue, unless the declaration expressly charges that there has been no waiver, and that the facts which would constitute a waiver do not exist. From the quotations from the declaration above set forth, it is seen that the appellant charged therein that he did not in any way consent to, authorize, or acquiesce in the shipment and sale of the cotton, either expressly or impliedly; that he did not authorize or consent for Millen or the appellee to sell the cotton, and in no way waived his lien thereon, either expressly or impliedly, and fully set forth facts which, it is alleged, showed there had been no waiver of the lien, and these positive averments were put in issue by the plea of the general issue.

The record further discloses that the evidence tending to establish a waiver of the lien by the appellant was not objected to upon the specific ground that a waiver had not been specially pleaded, and consequently the error, if any, in refusing to exclude this evidence, cannot now be availed of. The issue presented by the pleadings was accepted by the appellant, and the evidence of the respective parties bearing upon the question of waiver was admitted without a specific objection that such evidence was not permissible under the pleadings; and, as said in

the case of Bessler Movable Stairway Co. v. Bank, 140 Miss. 537, 106 So. 445, objections to evidence tending to establish an affirmative matter in avoidance of the allegations of a declaration cannot be considered on appeal unless the objection is specific and not general. In the case at bar, the absence of a special plea setting up a waiver could have been readily and easily supplied if the evidence had been specifically objected to on the ground that no waiver had been specially pleaded.

The appellant complains of numerous alleged errors committed by the court below in granting and refusing instructions requested by the respective parties, all of which may be disposed of by a consideration of the action of the court in refusing the peremptory instruction requested by the appellee.

Section 2238, Code 1930, declares and defines laborers' liens, and provides that "every employee . . . overseer or manager . . . who may aid by his labor to make, gather, or prepare for sale or market any crop, shall have a lien on the interest of the person who contracts with him for such labor for his wages, share or interest in such crop, whatever may be the kind of wages or the nature of the interest. . . . And such lien shall be paramount to all liens and encumbrances or rights of any kind created by or against the person so contracting for such assistance, except the lien of the lessor of the land on which the crop is made, for rent and supplies furnished." But it has been repeatedly held that this lien, or a landlord's lien on agricultural products to which the same legal principles are applicable, may be waived by a course of dealing between the employer and employee, or landlord and tenant, which shows consent to the disposition and sale of the crop by the employee or landlord. Seavey & Sons v. Godbold, 99 Miss. 113, 54 So. 838; Phillips v. Thomas, 128 Miss. 729, 91 So. 420; Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243; Tonnar v. Washington & Issaquena Bank, 140 Miss. 875,

105 So. 750; McGee v. Carver, 141 Miss. 463, 106 So. 760; Crutcher v. Commercial Bank, 146 Miss. 404, 111 So. 569; Quiver Gin Co. v. Looney, 144 Miss. 709, 111 So. 107.

In the case of Judd v. Delta Grocery & Cotton Co., supra, it was held that, "where the testimony shows that a tenant rented a plantation from the landlord for an annual money rental, and that the tenant with the knowledge and consent of the landlord each year sold the crops, the landlord by this course of dealing constituted the tenant his agent for the sale of these crops, and is estopped to assert the landlord's lien against an innocent purchaser or a broker who sold the crop at the request of the tenant, and accounted to the tenant for the proceeds thereof."

In the Quiver Gin Company case, supra, it was held that no express consent to waive the lien need be shown, but it may be shown by the course of dealing between parties, and, where the necessary inference from the course of dealing between the party is that the employee or landlord has consented to waive the lien, there can be no recovery.

In the case at bar, the appellant testified that, with his knowledge and consent, the cotton raised on the plantation was removed therefrom for the purpose of sale; that he expected Millen to sell the cotton and pay his salary "when he could pay it." He admitted that the cotton raised during the years 1926 and 1927 was sold by Millen, and he trusted him to sell this cotton and pay the salary due him (the appellant), but that Millen failed to pay him for each of those years. With knowledge of this fact, he permitted the crop of 1928 to be disposed of and sold in the same manner, still trusting Millen to pay him out of the proceeds of the sale of the cotton; and we think this knowledge of, and consent to, the method of handling the cotton and disposing of the same, and the course of dealing between the appellant and Millen for the several years, in effect constituted an appointment

of his employer as his agent to dispose of the cotton on which the lien existed, and that consequently the peremptory instruction requested by the appellee should have been granted.

The judgment of the court below will therefore be affirmed.

Affirmed.