FEDERAL LAND BANK OF NEW ORLEANS *v.* SOUTHERN CREDIT CORPORATION.

(Division B.  Jan. 8, 1940.)

[192 So. 827.  No. 33924.]

H. P. Farish and William C. Keady, both of Greenville, and B. C. Adams and T. H. Hedgepeth, both of New Orleans, La., for appellant.

194

**Wynn, Hafter & Lake** and **Chas. S. Tindall, Jr.,** all of Greenville, for appellee.

198

200

Argued orally by **William C. Keady** and **B. C. Adams**, for appellant, and **J. A. Lake, Jr.**, and **Chas. S. Tindall, Jr.**, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

The Federal Land Bank of New Orleans entered into a contract with one J. H. Criswell for the rent or lease of 525 acres of land, known as the Muscadine Plantation, located in Washington County, Mississippi. The rent for the said lands was $1,100, with eight per cent interest from maturity until paid, and was due to be paid on the first day of November, 1936. The lease contained various stipulations, among which was paragraph seven, reading as follows: "To sell in conjunction with and only by written permission of the Bank promptly the crops grown on the leased premises and not withhold any of same, and the failure so to do or the secretion or sale of said crops for the purpose of evading the enforcement of the lien of the Bank for said rental shall automatically make all rents due and payable immediately and subject said crops to the enforcement of the landlord's lien." The lease also contained this stipulation: "The Bank agrees that it will upon request waive its landlord's lien on the 1936 crops grown on the lands rented hereunder for the actual furnish account necessary to produce said crops provided the amount does not exceed $5.00 per acre for the cotton acreage and $4.00 per acre for the corn acreage

and not to exceed a total amount of $1800.00, provided, however, such request is made prior to the 1st day of May, 1936.''

In pursuance of this lease contract, the Federal Land Bank of New Orleans waived a lien to the extent of $1,800 in favor of the appellee, Southern Credit Corporation, and executed with the waiver is an agreement to subordinate a lien of the Federal Land Bank to the amount of the furnish by the Southern Credit Corporation, and agreed not to interfere with the borrower in his possession of any property subject to the lien of the Southern Credit Corporation until said crops are harvested or until December 1st of the year in which they mature, whichever is the earlier. The crops were grown by Criswell and cotton was placed in the Delta Compress, and the receipts were issued to Criswell, who turned them over to the Southern Credit Corporation thereafter. Criswell sold cotton to J. R. Hodges Cotton Company, of Greenville, Mississippi from time to time during 1936, and J. R. Hodges Cotton Company issued the checks to the Southern Credit Corporation for the amount of the purchase of the cotton, noting on the check ''for account of J. H. Criswell.''

The first sale of the cotton was dated September 24, and this paid the account of the Southern Credit Corporation, and the Southern Credit Corporation issued its check to Criswell for $1,164.97. Thereafter, on the 6th day of November, another check was issued to Criswell for the sale of another lot of the cotton in the sum of $2,100.89, and on the 4th day of December $3,207.21 was issued to Criswell. The case was tried largely upon an agreed statement of facts with certain supplemental testimony. The J. R. Hodges Cotton Company knew that the Southern Credit Corporation had the lien on the cotton and issued its checks to the Southern Credit Corporation marked as above indicated, but it did not know whether Criswell was a tenant or an owner of the land which produced the

cotton. In other words, the Hodges Cotton Company did not know anything about the lease or the lien of the Federal Land Bank. There was no express agreement or contract on the part of the Southern Credit Corporation to pay the rental owed by J. H. Criswell to the Federal Land Bank, and the Southern Credit Corporation did not notify the Federal Land Bank of the date of payment to it by J. H. Criswell of his account. It was also agreed that J. H. Criswell had not paid the $1,100 rent set out in the contract to the Federal Land Bank. It was further agreed that in 1935 J. H. Criswell had rented the same property from the Federal Land Bank and that in the fall of that year as in the fall of 1936, he ginned, stored, and received the receipts from the warehouse for his cotton, just as he did in 1936. The receipts during the year 1935 were made out in his name and delivered just as in 1936, and in the year 1935 they said Criswell sold and handled his cotton himself just as in 1936, and Criswell, during the year 1936, did not farm any land other than that leased from the Federal Land Bank.

The Federal Land Bank brought its suit against the Southern Credit Corporation for a conversion of the proceeds of the cotton above the amount which the bank had waived in favor of the Southern Credit Corporation, and proceeded on the idea first of conversion, and second upon the idea that if the conversion were not applicable to the facts of the case that it created a trust, and that the Southern Credit Corporation owed the duty to the bank to notify it when it had collected its debt from J. H. Criswell, and that it owed it the duty to hold the money for the benefit of the Federal Land Bank, or to turn the money over to the Federal Land Bank, and that it breached its trust when it turned the money over to Criswell instead of the bank. Criswell was introduced as a witness and testified that he sold his cotton in 1935 and in 1936, and that he paid all the rent of the year 1936 except $200, and that he paid the same by his delivering the

same to J. S. Calhoun, who was field manager at Greenville, that is, the one that Criswell did business with. Criswell testified that he ginned the cotton, sent it to the compress, and mailed the receipts to the Southern Credit Corporation, where he got financed, and the Southern Credit Corporation did not have anything to do with the sale of the cotton, and that the Federal Land Bank gave him authority to sell the cotton. The lease contract on the authority of Criswell to sell was set out above in paragraph seven quoted herein.

There was also testimony introduced that the Federal Land Bank had leased other lands contiguous to Greenville to other parties and intrusted all of its tenants or lessees with the sale of the cotton and the handling of the proceeds, this being testified to by two credit corporations who had customers who had leased or rented land from the Federal Land Bank. This testimony as to the custom and practice of the Federal Land Bank with other tenants or lessees was objected to, and is assigned for error, the court below having dismissed the bill of the Federal Land Bank. The customers other than Criswell, or some of them, extended over a period of years, and, as stated, Criswell was permitted to sell the crop in 1935 in the manner indicated above, but he did not make an excess of the cost of production it appears.

There are many interesting questions presented that will appear from the statement, but we deem it necessary only to deal with the custom and manner in which the matter was handled, in order to dispose of the rights of the parties. It has been repeatedly held that this lien or a landlord's lien on agricultural products to which the same principles apply may be waived by a course of dealing between the employer and the employee, or landlord and tenant, which shows consent to the disposition and sale of the crop by the employer or landlord. Williams v. Delta Grocery & Cotton Co., 159 Miss. 575, 132 So. 732; Seavey & Sons v. Godbold, 99 Miss. 113, 54 So. 838;

Phillips v. Thomas, 128 Miss. 729, 91 So. 420; Judd v. Delta Grocery & Cotton Co., 133 Miss. 866, 98 So. 243; Tonnar v. Washington & Issaquena Bank, 140 Miss. 875, 105 So. 750; McGee et al. v. Carver, 141 Miss. 463, 106 So. 760; Crutcher v. Commercial Bank, 146 Miss. 404, 111 So. 569; Quiver Gin Co. v. Looney et al., 144 Miss. 709, 111 So. 107.

In Judd v. Delta Grocery & Cotton Company, supra, it was held that where the testimony showed that the tenant rented the plantation from the landlord for an annual money rent, and the tenant, with the knowledge and consent of the landlord, each year sold the crops; the landlord, by this course of dealing, constituted the tenant his agent for the sale of these crops, and he could not assert his landlord's lien against an innocent purchaser who bought the crops from the tenant, and accounted to the tenant for the proceeds thereof.

In the Quiver Gin Co. v. Looney case, supra, it was held that no express consent to waive the lien may be shown, but it may be shown by the course of dealing between the parties, that is, the landlord and tenant, and necessary inferences from the course of dealing between the parties may show that the lien was waived.

Under these authorities and under the facts of this case, the Federal Land Bank, by intrusting Criswell to sell the cotton, in fact accepted the risk incident to that permission. It is true the lease contract stipulated that Criswell should sell with the consent of the Federal Land Bank in writing, but that does not prevent the waiver by course of conduct indicated above from constituting a waiver of its lien, and the chancellor was correct, or at least was authorized to find, from the facts that the Federal Land Bank acquiesced in the practice that Criswell had in the matter, and that it could not, under such facts, recover the rent from the Southern Credit Corporation.

It is unnecessary to pass on the other questions involved in the case, and the judgment will be affirmed.

Affirmed.